CORREGAN v. HAY et al. |

(Supreme Court, Appellate Division, Fourth Department. May 3, 1904.)

1. UNINCORPORATED TRADE UNION—ILLEGAL EXPULSION—RIGHT TO SUE IN THE
   STATE COURTS.

   In an action by a member of a voluntary unincorporated trade union,
   composed of local unions and a general body, to compel plaintiff's rein-
   statement into full membership, and to enjoin the defendants from in
   any manner preventing or attempting to prevent plaintiff from obtain-
   ing employment at his trade on account of an illegal expulsion, plaintiff
   cannot be remanded to his remedy under the rules of the union for ap-
   peal, where it appears that the session of the court at which the ap-
   peal would have to be heard was so great a distance from plaintiff's
   residence as to make the requirement unreasonable, that he was re-
   fused by the local union the papers, and documents necessary for the
   purpose of perfecting his appeal unless he first paid the fine assessed
   against him, and that the offense with which he was charged was a slan-
   derous speech affecting the presiding officer and controlling spirit of the
   court within the union to which the appeal would have to be taken.

Appeal from Special Term, Onondaga County.

Action by Charles H. Corregan against Arthur A. Hay, as president
of Syracuse Typographical Union, No. 55, and others. From a judg-
ment for defendants, plaintiff appeals. Reversed.

The action was commenced on the 9th day of September, 1901, to compel
the defendants to reinstate the plaintiff to full membership in Syracuse Typo-
graphical Union, No. 55, from which he alleged he was wrongfully expelled; ·
to restrain and enjoin the defendants from in any manner preventing or at-
tempting to prevent the plaintiff from obtaining employment at his trade
(that of printer); and to recover damages claimed to have been sustained
by him through the alleged wrongful acts of the defendants. The chief de-
fense interposed by the defendants is that the plaintiff was bound to exhaust
his remedies within the organization to which he belonged, before appealing
to the courts for redress, and that, having failed to do so, he cannot maintain
this action.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
HISCOCK, and STOVER, JJ.

Frank Hopkins, for appellant.
M. E. Driscoll, for respondents.

McLENNAN, P. J. The plaintiff is a printer by occupation, and
prior to August, 1901, was a member of Syracuse Typographical Union,
No. 55, which is a voluntary, unincorporated association, composed en-
tirely of printers residing in the city of Syracuse and vicinity, and is
affiliated with the International Typographical Union, an organization
which takes in all union printers in this country. The purpose of the
union is to advance the wages of its members, to prevent the employ-
ment as printer of any person not belonging to the organization, and
provision is also made for a small death benefit to the families of de-
ceased members. The evidence tends to show that it is extremely
difficult, if not impossible, for a printer not a member of such organiza-
tion, or of one of its locals, to obtain employment in his trade, and that
considerable pecuniary damage resulted to the plaintiff by reason of his
expulsion from the union; that he was immediately discharged from

his employment as printer, where he had been engaged for several years; and that he was practically unable to procure employment from that time until the trial of the action. The manner in which such result was brought about, and whether the means employed to accomplish that purpose were legal or otherwise, it is unnecessary for the purposes of this appeal to inquire. The proof also tends to show that on the evening of July 6, 1901, the plaintiff made a speech upon a public thoroughfare in the city of Syracuse which it is alleged was detrimental to the interests of the International Typographical Union, and also of the local union, No. 55, and of such a character as to afford cause for his discipline. Among other things, it is claimed the plaintiff said that the International Typographical Union was rotten to the core; that its president, James M. Lynch, was the worst dog in the heap; that Mr. Lynch abused the office by working into the hands of the management of newspapers; that the local officers were a lot of labor fakirs; and that he used other language of similar import. Thereafter, and on the 31st day of July, 1901, the plaintiff was informed by a letter written by the secretary of the local union that verbal charges had been made against him because of his speech, and that formal charges would be preferred against him at the next regular meeting of the union, to be held on August 4, 1901. He was also informed by such communication that there would be a preliminary meeting on the evening of August 2d at the rooms of the local lodge, when the question of formulating the charges against him would be considered, and the plaintiff was asked to be present at such preliminary meeting. On August 1, 1901, the plaintiff wrote a letter to the secretary, stating, in substance, that, as charges were to be formulated and presented against him, he did not think it would be useful for him to be present at the preliminary meeting, and therefore would not attend. Without further notice to the plaintiff, and without any formal charges having been presented to him, or notice of the same in any manner given, the plaintiff was fined $50, and suspended until such fine was paid. On the 5th day of August, 1901, the plaintiff was informed by the president of the local union of such action, and that at its regular meeting held August 4, 1901, the charges preferred against the plaintiff were considered, and were sustained, and that on the recommendation of the trial committee he was fined $50, and to stand suspended until the same was paid. The plaintiff immediately demanded from the president copies of such documents, evidence, reports, and charges, entries upon minutes, and all other matters of record bearing upon the case against him in the hands of the officers of the union or of its committees. The local union neglected and refused to furnish such information to the plaintiff, and, without further action on its part, on August 10, 1901, served a notice upon Lyman Bros., by whom the plaintiff was employed as printer, informing them of the action of the local union of August 4th, by which the plaintiff was fined $50, and suspended until paid, and further saying that as the plaintiff had not appealed to the International Typographical Union within five days, as provided by the constitution, and had not paid his fine, his membership in local union No. 55 ceased on the above date. Immediately thereafter plaintiff was discharged from the employment of Lyman Bros., and, as above

stated, has ever since been practically without employment in his trade, owing to the efforts of the Syracuse local union.

The trial court found as a fact, which finding was abundantly sustained by the evidence, that plaintiff demanded from the defendant Hay, the president of the local union, copies of the papers necessary to an appeal, and that said defendant replied to plaintiff that he could not have such copies until he paid or deposited the sum of $50, the amount of the fine imposed upon him. The court also found as a conclusion of law, which was amply justified by the facts, "that the proceedings by reason of which a fine of $50 was inflicted upon plaintiff, and his suspension until said fine was paid, were irregular and without jurisdiction. No proper notice was given the plaintiff that charges were to be preferred against him, and no opportunity was given him to defend himself against said charges." The court also found, as a second conclusion of law, "that plaintiff was bound to exhaust his remedies within the organization before appealing to this court for redress; that said remedies were reasonable and not burdensome."

We may assume, without deciding, that by the terms of the constitution of the Syracuse Typographical Union, No. 55, and of the International Typographical Union, the plaintiff, or any other member claiming to be aggrieved by an action of the union of which he was a member, should seek redress through it or them, and that, until such means of redress within the organizations have been exhausted, no resort to the courts can be had. It, however, is well settled that, if the means of redress afforded by such associations or organizations are unreasonable in their nature, the injured member will not be compelled to resort to such associations for redress, but may then appeal to the courts. The rule is stated in the headnote of Matter of Brown v. Supreme Court of the Independent Order of Foresters, 176 N. Y. 132, 68 N. E. 145:

"The fact that, in such a case, if a suspended member is denied reinstatement, the constitution and by-laws provide that he may appeal to various courts or tribunals within the association, and that no member shall be entitled to bring any civil action or legal proceeding until he shall have exhausted all the remedies by such appeals, does not debar him from any remedy or relief in the courts of this state in a case where the obstacles to the prosecution of an appeal amount to almost a denial of justice, and where, if prosecuted, no relief would result therefrom."

We think the rule thus stated applies with peculiar force to the case at bar. In the first place, one of the charges against the plaintiff was that he had slandered the president of the International Typographical Union, to whom his appeal, in the first instance, must have been taken, and that if the decision of such appeal had been adverse to him, and had been carried to the supreme court of the union, Lynch would have been the presiding officer of that court. Again, the session of the court at which the plaintiff's appeal could have been heard was held in Indianapolis, many hundreds of miles distant from the place of residence of the plaintiff. But still further, and which we deem of even more importance, the plaintiff, as found by the trial court, was expelled from the union without notice, and without an opportunity to be heard in his own defense, as required by the constitution of the association; and we therefore think it would be unreasonable to so construe such con-

stitution as to compel the plaintiff to seek redress for such wrong under and by virtue of its provisions. In addition, it may be said that, by the refusal of the local association to furnish to the plaintiff the papers and documents necessary in order that he might perfect his appeal, he was deprived of an opportunity to determine whether or not such appeal within the organization would be availing, and therefore whether or not it should be taken, and by the action of the local lodge he was deprived of his means of livelihood, by being discharged from his employment as printer, and prevented by it from obtaining other employment of that character. Assuming, as found by the trial court, that the plaintiff was expelled from the defendant's association illegally and without jurisdiction, but that he had the right to appeal to it for redress of such wrong, we think, under the circumstances disclosed by the evidence in this case, it would be unreasonable to hold that it was necessary for the plaintiff to take such appeal, and to obtain in the first instance a determination from such association. The plaintiff was denied access to the papers, records, charges, and evidence upon which he had been expelled from the local union, which were necessary to his appeal. The offense, if any, committed by him, affected the presiding officer and controlling spirit of the appellate court. He had been expelled without a hearing, and thereby his means of earning a living had been taken from him. To prosecute his appeal would have involved the expense of going to a distant city, and, as a prerequisite of taking such appeal, he was required to deposit $50, the amount of the fine imposed upon him by the local union, as found by the trial court, without jurisdiction, and without having given the plaintiff an opportunity to be heard in his defense. Under these circumstances, we think it was unreasonable to require the plaintiff to prosecute his appeal within the organization, as a prerequisite of bringing the action at bar, and that his failure to do so does not prevent his resort to this court. The conclusion is reached that the judgment appealed from should be reversed, and a new trial ordered.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event. All concur.