INGEBORG LINDAHL v. THE SUPREME COURT I. O. F.[1]

January 25, 1907.

Nos. 14,986—(72).

**Death of Insured—Evidence.**

In an action to recover the amount of a benefit certificate issued by a benevolent association, it is *held:* The evidence sustains the verdict of the jury as to the death of the insured and the identity of the body.

[1]Reported in 110 N. W. 358.

**Validity of Order's Rules.**

The constitution and by-laws of the order denying the right of resort to the civil courts until after all remedies within the order are exhausted, it is *held:*

(a) Such provisions, if reasonable, are valid and binding upon the members who assent thereto, and, if within the language, upon their beneficiaries.

(b) If, however, they impose unnecessary and unreasonable burdens and restrictions, which practically destroy the value of the contract of insurance, they are ineffective, and may be disregarded.

(c) Provisions which require an appeal to the highest tribunal of the order, which in this instance was required to meet in a foreign country, at a date three years from the time when the claim accrued, are unreasonable and void.

**Suicide.**

The defense being suicide, it is *held:*

(a) The burden of proving that the deceased committed suicide is upon the defendant.

(b) The presumption is against suicide.

(c) If the known facts are consistent with the theory of natural or accidental death, the presumption which the law raises from the ordinary motives and principles of human conduct requires a finding against suicide.

(d) When circumstantial evidence is relied on, the defendant must establish facts which exclude any reasonable hypothesis of natural or accidental death.

**Evidence.**

Certain rulings on the rejection of evidence considered.

Action in the district court for Ramsey county to recover $1,000 upon defendant's benefit certificate. The case was tried before Kelly, J., and a jury, which rendered a verdict in favor of the plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*O. H. O'Neill,* for appellant.

*Chas. G. Laybourn,* for respondent.

ELLIOTT, J.

The Independent Order of Foresters is a fraternal benevolent association incorporated under the laws of the Dominion of Canada. It does business under the lodge system, with a supreme body styled

the "Supreme Court," intermediate bodies called "High Courts," and local lodges called "Subordinate Courts." All the members receive benefit certificates which entitle them to death benefits, which are payable by and through the supreme court. The money to make these payments is raised by regular monthly assessments levied on all the members through the subordinate courts. The entire body is incorporated under the name of the "Supreme Court of the Independent Order of Foresters," and this is also the name of the supreme legislative and judicial body, which meets once in three years. All the business in reference to benefits is transacted by the subordinate courts and the supreme court. When the supreme court is not in session, the supreme authority in the order is vested in an executive council, composed of seven executive officers of the order. The headquarters of the supreme court is at Toronto, Canada.

In 1899, Swan Malcolm Lindahl became a member of this order, and there was issued to him the usual benefit certificate, under which the beneficiary therein named became entitled, upon the death of Lindahl while in good standing, to receive from the order the sum of $1,000. The provisions of the constitution and bylaws of the order were made a part of the contract between the order and the member, and certain sections of the constitution, including that which provides that any member of the order who may commit suicide shall ipso facto forfeit all benefits under his certificate, were set out in full in the certificate. The laws of the order, thus made a part of the contract, also provided for appeals from one authority to another within the order, and that a member or beneficiary with a claim against the order should exhaust all the remedies by appeal within the order before resorting to the civil courts. About March 24, 1905, Lindahl, while in good standing in the order, disappeared, and a few days thereafter what was claimed to be his body was found in the Mississippi river. The beneficiary named in the certificate made formal proof of death and demanded payment of the amount of the certificate. The local court or lodge to which he belonged certified these formal proofs of death to the supreme chief ranger, who disallowed the claim on the ground that, if Lindahl was dead, he had committed suicide. The plaintiff then brought this action, and recovered a verdict for the full amount payable under the certificate. The defendant appealed from

an order denying a motion for a judgment notwithstanding the verdict or for a new trial.

The appellant contends (1) that the finding of the jury that the dead body taken from the river was that of Lindahl is not justified by the evidence; (2) that the right to maintain an action on the certificate is contingent upon first exhausting the remedies on appeal within the order; (3) that the court improperly excluded evidence of a certain letter claimed to have been written by Lindahl to his wife; and (4) that the court erred in giving certain instructions in reference to the presumptions and the burden of proof on the issue of suicide.

1. The appellant has made a very careful analysis of the evidence, which it claims is insufficient to prove that the body found in the river was that of Lindahl. We do not find it necessary, or think it desirable, to review the evidence upon this issue. The trial court properly held that there was evidence sufficient to carry the question to the jury and to sustain its conclusion.

2. Associations of the character of the appellant very generally provide by their bylaws and contracts for the adjudication of controversies arising between members, or between members and the association, by tribunals within the order. Such provisions differ in form and scope, but all seek to prohibit or restrict the right of the member or his beneficiary to sue the order in the civil courts. In some instances it is provided that the determination of the controversies by such tribunals shall be final and conclusive, but more commonly that the member shall not resort to the civil courts until he has exhausted all the remedies, by appeal or otherwise, which are provided for him within the order. It is generally conceded that, in so far as such requirements relate to the internal government, doctrine, and discipline of the association or order, they are binding upon the members, and nc right exists to resort to the courts, unless the rules of the order have been observed. In some cases the restrictions are held valid and effective as between the association and its members, but as not determining the rights of third persons, who claim benefits under contracts between members and the association. Baltimore v. Stankard, 49 L. R. A. 382, note, where the cases are collected.

The conflict of authority is due largely to the adoption of different theories as to the nature and purpose of the requirements. The con-

clusion depends somewhat upon whether the provisions are regarded as rules for the government of charitable and benevolent associations in matters relating to discipline and government, as provisions for the arbitration of disputes, or as regulations for the presentment and allowance or disallowance of claims against the association. Many of the so-called benevolent and fraternal associations which are largely engaged in the life insurance business can no longer be treated as charitable organizations. Their insurance features are but remotely connected with the charitable and benevolent work of the orders. Their certificates are simply insurance contracts, and the benefits to which the members are entitled thereunder result from the payment of full and adequate consideration. If the provisions are treated as providing for arbitration, they are subject to the objection that parties cannot be permitted to bind themselves in advance to submit claims which may arise in the future to arbitration, and thus oust the courts of their jurisdiction. There is also the further objection that the association is made the arbitrator in its own case.

But there is no valid objection to treating such requirements as provisions for the presentation of claims against the associations, in order that they may be fully examined and passed upon by the proper officers before the association is subjected to the expense and annoyance of litigation. The right to require a claim to be presented to designated officers cannot be questioned. It seems equally clear that the association may prescribe a mode of procedure for securing the acceptance or rejection of claims, provided it is not such as to deprive the parties of their substantial contract rights. Requiring claims for benefits to be first presented to the officers of the association certainly violates no property rights. Nor can it be unreasonable to require that the member or his beneficiary shall appeal to the governing body of the order and thus secure the approval or rejection of his claim by the final action of those who are entitled to speak with conclusive effect for the order. Until the highest authority in the order has rejected the claim, it may reasonably be said that the debtor has not refused to pay. If follows that, if the requirements are reasonable and not of such a nature as to nullify the contract by rendering its enforcement so difficult and uncertain as to destroy its value, they will be enforced by the courts.

The laws of the appellant contain the following provisions:

1. No member of the order, nor his beneficiary, nor his legal representative, nor other person in any way interested in any of his benefits, nor any one deriving legal rights from him, shall be entitled to bring any civil action or other legal proceedings against the supreme court or against any other court or branch of the supreme court until he shall have exhausted all the remedies provided in the constitution and laws, by appeals and otherwise; and any member of the order or his beneficiary or his legal personal representative or other person in any way interested in any of his benefits or deriving legal rights from, through, by or under him or them or any of them who shall bring any civil action or other legal proceedings against the supreme court or against any other court or any other branch of the supreme court before he shall have exhausted all remedies within the order, by appeals and otherwise, shall ipso facto, forfeit all benefits and all rights, claims and demands therein and thereto to which he or they or any of them might otherwise have been entitled, and if a member of the order he shall stand suspended from the order.

2. All civil actions or other legal proceedings to be brought or instituted against the supreme court or against any other court or branch of the supreme court shall be brought or instituted within six months after notice of the final action of the supreme court in the matter has been served in accordance with the provisions of sections 42, 98, and 165 of the constitution and laws.

The right of appeal is vested in the member or beneficiary and also in the order by the following provisions:

1. Unless otherwise specifically provided in the constitution and laws, the right of appeal shall be vested in every member of the order, and, in case of the death or disability of a member, the right of appeal shall be vested in his beneficiary or personal representative.

2. Unless otherwise specifically provided in the constitution and laws, the right of appeal shall also be vested in every court;

and an appeal shall lie against the action or decision of any officer or of any court, except the action or decision of the supreme court. The action or decision of the supreme court shall be final and conclusive in all cases.

3. Any aggrieved party failing to take an appeal from any action or decision in the manner and within the time laid down in the constitution and laws shall be bound by such action or decision, and shall have no farther recourse, whether in law or equity, in respect of the subject-matter of such action or decision.

4. A decision of the supreme chief ranger, unless altered or reversed on appeal, shall be final and binding.

The sequence of appeals is as follows:

Direct to the supreme court or supreme chief ranger.

1. All appeals arising in any of the courts in connection with the insurance or mortuary benefit and in connection with the sick and funeral benefits and in all matters relating to the general laws shall be direct from the court deputy to the supreme chief ranger.   *   *   *

3. From the supreme chief ranger to the executive council.

4. From the executive council to the supreme court, whose decisions shall be final on all questions

We do not construe these provisions as attempting to deprive the holder of the certificate of the right to appeal to the civil courts after he has exhausted the remedies provided by the constitution and by-laws of the order. But the restrictions which they impose are so unnecessary and unreasonable as to deny substantial relief to the beneficiary, and are therefore unenforceable. Before an action can be brought an appeal is required to be taken in the order and manner designated to the supreme court of the order. The bylaws provide that

The supreme court shall meet in regular session triennially or quadrennially in any country in which it has branches, at such time and place therein as may have been selected as provided in the constitution and laws.

> The selection of the time and place for holding the next regular session of the supreme court shall be determined immediately after the election of officers, * * * provided, that the supreme court shall not meet, except with unanimous consent, more than twice in succession within the United States to once in Canada and once in countries other than the United States and Canada.

There is no provision for a reasonably prompt hearing of appeals. The evidence shows that the last regular meeting of the supreme court was held in January, 1905, at Atlantic City, New Jersey, and that the next meeting is to be held in 1908, at Toronto, Canada. The right to demand the payment of this certificate accrued in March, 1905. Had Mrs. Lindahl appealed from the decision of the supreme chief ranger to the executive council and it had decided against her, she could not have had her appeal heard by the supreme court until its meeting in Toronto, in 1908. Three years must have passed before she could have learned whether the order would recognize the validity of her claim, and, if it was then denied, there would follow the further delay necessarily resulting from litigation in the civil courts.

When we consider the character of these certificates, and remember that they are generally taken by persons in very moderate circumstances, for the protection of wives and children against the demands which arise upon the death of the insured, we are very clear that any bylaws or provisions which require the beneficiary to submit his claim to an appellate tribunal which will hold its next session three years in the future in a foreign country are unreasonable and nonenforceable. Within the terms of these provisions it is possible for the order to delay a final definite admission or denial of liability for so long a time as to deprive the contract of insurance of any value and render it practically optional with the order to admit or escape liability. Kane v. Supreme Tent, 113 Mo. App. 104, 87 S. W. 550; Strasser v. Staats, 59 Hun, 143, 13 N. Y. Supp. 167. The New York Court of Appeals has well said that this appellant "had no power under the circumstances of the case to deprive the relator of the right to resort to the civil court for relief or to compel him to seek his remedies by appeal to the various judicatories erected within the order. The manner in which these

courts are organized, the expense and delay involved in procuring a hearing in another and very remote jurisdiction, were also facts which amounted almost to a denial of justice." Brown v. Supreme, 176 N. Y. 132, 68 N. E. 145. See, also, Corregan v. Hay, 94 App. Div. 71, 87 N. Y. Supp. 956.

It follows that the plaintiff was entitled to bring her action without reference to these unreasonable requirements of the defendant's constitution and by-laws, notwithstanding the fact that the member had assented to the same when he became a member of the order. Had the requirements been reasonable, and designed to enable the order, through its proper officers or governing bodies, to properly examine the claim, in order to give an intelligent and authoritative answer to the demand, they would have been enforceable, and until compliance therewith the beneficiary would have had no standing in a civil court. Carey v. Switchmen's Union of North America, 98 Minn. 28, 107 N. W. 129.

3. The defendant interposed the defense of suicide on the part of the deceased member, and if this fact had been established there could under the terms of the contract have been no recovery. It is settled that upon the issue of suicide the burden is upon the defendant, who asserts the fact, to prove the same by a fair preponderance of the evidence. In all legal discussion the existence of certain qualities in human nature are presumed. Common experience teaches that the love of life, the instinct of self-preservation, respect for the laws of the land, and the principles and teachings of religion are ordinarily sufficient to prevent a person from destroying his own life, and therefore, when the facts proved with reference to death admit equally of the inference that the death resulted from accident or suicide, the presumption is that death was accidental. Hale v. Life Indemnity & Inv. Co., 61 Minn. 516, 63 N. W. 1108, 52 Am. St. 616; Sartell v. Royal Neighbors of America, 85 Minn. 369, 88 N. W. 985. The existence of a legal presumption against the fact of suicide is not denied by the appellant; but it is contended that the trial court so instructed the jury as to require the fact of suicide to be shown by the defendant by more than a fair preponderance of the evidence. The court told the jury that

> In order to sustain the defense of suicide, the burden is upon the defendant to establish by a preponderance of the evidence

that Swan Malcolm Lindahl came to his death by his own effort
and with the intention to take his own life.

It is admitted that this was a correct statement of the law; but the
court also instructed the jury that

In this class of cases the rule is that every reasonable hypothesis
for accounting for death other than by suicide should be ex-
cluded from the case before you can conclude it was suicide,
and then only, of course, from evidence warranting that con-
clusion.

When these two instructions are considered together, they state the
rule of law correctly. Boynton v. Equitable, 105 La. 202, 29 South.
490, 52 L. R. A. 687, and cases cited in note.

As long as the evidence is consistent with the theory of accidental
death, the presumption against suicide is controlling. The issue being
the fact of suicide, it is for the defendant to prove this ultimate fact by
a fair preponderance of the evidence. It starts with the burden of
overthrowing the presumption that a person does not voluntarily de-
stroy what is commonly regarded as the most precious of all pos-
sessions, life itself. When the fact of death appears, the law presumes
that it must have resulted from causes which were not voluntarily
brought about by the deceased. Death may result from innumerable
causes. The facts of a case may suggest accidental shooting, poisoning,
or drowning. If the evidence is consistent with the theory of either,
the presumption which the law raises from known and recognized con-
trolling forces of human nature requires the conclusion that the death
was accidental. If the known facts are consistent with a cause of
death which does not involve self-destruction, that cause must be
accepted. After all the hypotheses which are consistent with an inno-
cent or accidental death are eliminated, the conclusion of suicide may
then be drawn. The burden is upon the defendant to show that the
circumstances and conditions are inconsistent with any other reason-
able cause of death than that of suicide; that is, it must eliminate and
disprove all other causes of death which are consistent with the evi-
dence before the jury is justified in inferring that the deceased com-
mitted suicide. The ultimate fact of suicide is thus shown by the proof

of certain evidentiary facts which are inconsistent with the theory of accident or natural death, or by proof of the nonexistence of facts which would justify the inference of accident. But the ultimate fact is required to be proven by a preponderance of evidence only, and this rule is in no way affected by the subsidiary requirement that the defendant must by its evidence exclude every other reasonable theory for accounting for the death.

4. The wife of the deceased was permitted to testify that after the date of the death of her husband she received a letter which purported to have been written by her husband before his death. The record shows that while Mrs. Lindahl was on the stand the attorney for the appellant said:

> We propose to show by this witness that on the twenty fifth day of March she took the communication which she has testified to—the note—to one Iver C. Nelson; that in this note Lindahl stated that he intended to kill himself by drowning himself in the river; and to follow this up by proving the contents of the note by the testimony of Nelson.
>
> Mr. Laybourn: I object to the offer as incompetent and calling for a communication between husband and wife which is prohibited by the statute; that all this examination with reference to that is contrary to the statute—that is, anything further that you would attempt to ask along this line, as long as it is apparent that this is the offer. Objection sustained. Exception by defendant.

The appellant assigns this ruling as error, and claims that his offer should be construed as being limited to showing merely that the witness gave the letter to Nelson, but the offer does not so read. It is clearly an offer to prove by the witness (1) that she took the note to Nelson, (2) that in the note Lindahl stated that he intended to kill himself by drowning in the river, and (3) to follow this up by proving the contents of the note by the testimony of Nelson. After the witness had testified to taking the communication to Nelson, and that Lindahl stated therein that he intended to kill himself, the evidence was to be followed up by the testimony of Nelson as to the contents of the letter. However, if it was error to deny the right to show that the witness

100 M.—7

had placed the letter in the hands of Nelson, it was without prejudice, as Nelson was afterward allowed to testify that he had received it.

The court also properly refused to allow Nelson to testify to the contents of the letter, as it clearly appeared that Mrs. Lindahl placed the letter in his hands as her attorney, and that it was therefore privileged. The copy of the Minneapolis Tribune which was claimed to contain a copy of the copy of the letter which had been furnished to the paper by Mr. Nelson was properly excluded.

We find no error in the record which would justify a reversal, and the order appealed from is therefore affirmed.