BIRCHER et al v. MODERN BROTHERHOOD OF AMERICA.

The burden is on a fraternal benefit order interposing suicide as a defense to a certificate to show that the circumstances are inconsistent with any other reasonable cause of death than suicide.

In an action at law, where the facts are in dispute, or, if undisputed, are such that different minds might fairly draw different conclusions, such issue must be submitted to the jury.

In an action on a benefit certificate, whether insured intentionally committed suicide by drowning or lost her life accidentally while fleeing from an imaginary danger, she being insane, **held** for the jury.

(Opinion filed, April 5, 1910.)

Appeal from Circuit Court, Brown County. Hon. J. H. McCoy, Judge.

Action by John Bircher and another against the Modern Brotherhood of America. From a judgment for plaintiffs and an order denying a new trial, defendant appeals. Affirmed.

*J. E. E. Markley* and *J. H. Perry,* for appellant. *L. W. Crofoot,* for respondents.

HANLEY, J. This is an action on a membership certificate issued by the defendant, an Iowa fraternal beneficiary corporation. The complaint is in usual form, alleging death by drowning. All its allegations are admitted, the only defense being that the certificate was issued on an application containing this stipulation: "I further agree that in the event of my death by suicide, whether sane or insane, any certificate which may be issued upon this application by said fraternity shall become void;" that the certificate itself contained this clause: "If the holder of this certificate shall die by her own hand, whether sane or insane, then the certificate shall be null and void;" and "that said Anna F. Bircher came to her death by suicide at the time and place stated in plaintiff's complaint, she then and there having caused her own death by drowning herself with suicidal intent." A verdict having been returned in favor of the plaintiffs and judgment entered thereon, defendant appealed thereform and from the order denying its application for a new trial.

The learned circuit court charged the jury in part as follows: "The court further instructs the jury that the law does not presume that a person came to his death by suicide, but on the contrary presumes in the absence of explanation that death resulted from natural causes or from accident. The vital question in this case is whether Anna F. Bircher intended to commit suicide, and the presumption of law in the absence of explanation is that she did not so intend, and this presumption remains until overcome by clear and satisfactory evidence which excludes every other reasonable theory; and the plaintiff is entitled to recover, unless on a fair consideration of all the evidence, you are satisfied that the evidence does exclude every reasonable theory except that of

suicide." To these portions of the charge defendant excepted
on the ground that it was for the jury to decide whether deceased
committed suicide or not, solely on the evidence without regard
to presumptions of her intent; the undisputed evidence showing
she was insane, and there being undisputed evidence as to the
manner of her death. That deceased was drowned is established
by the pleadings; that the certificate and application contained
the clauses alleged in the answer is conceded; hence, the only
disputed issue of fact arose from the affirmative allegation of the
answer that deceased "caused her own death by drowning her-
self with suicidal intent." If the question as to whether deceased
intended to commit suicide was not vital, there was a vital error
made by the person who framed defendant's answer. That de-
ceased was insane is conceded, respondents contending that she
"came to her death, not by suicide, but by accident, while fleeing
from an imaginary danger, under the insane delusion that some
one was seeking her life, in an effort to preserve it, and not with
intent to destroy it."

The circumstances attending the drowning are thus described
by Lena Johnson, called on behalf of the defendant, the only
witness who saw the deceased enter the water: "I saw her
coming from the direction of Rollin Johnson's house and towards
our house; she came to the place where the wall of the bank is
quite steep. At that place the bank is curving around to make
the curve, and the steepest point is a little off the line of the path,
and she looked back just as she was turning. She turned her
head over her shoulder and kept coming. She did not stop, and
when she got to the bank she went down very fast, her body
leaned forward and her hands out in front of her. She had a
medium long skirt on. I could not see her feet. She went down
the bank very fast, and pitched forward face down in the water.
The bank goes down straight. I saw the place where she was
taken out; it is very near the place where she went down. I
could not tell whether she ran down the bank and threw herself
in, or whether she was trying to save herself from falling
when she went down there. When she went down

forward into the water she splashed with her hands and feet; her face was down. I did not notice whether her face was under water; the water splashed so high I could not see her face. It scared me, and I ran on top of the house to see if anybody was coming, and I ran down in the house and told the children to keep quiet, and I went on top of the house again. When I came out of the house she was hollering as though her mouth was full of water. I could not understand what she said. I went back to the house and told the children to keep quiet and went towards Johnson's. I saw her in the water for about three minutes and she was splashing the water all the time, until I got half way, then she stopped. In going to Rollin Johnson's house I followed the creek a little ways and I turned off because I did not care to see her. When she lay in the water she turned on her back and her face was straight up and her hands straight out, she was not conscious and was not hollering, and as I passed it seemed as if she was looking at me, her head was turned a little. I went about twenty rods towards Rollin Johnson's before I met him. I was not there when the body was taken out." This testimony was not disputed. So, in a sense, there was undisputed evidence as to the manner of the death. It was undisputed that death resulted from drowning. But this evidence, taken as true, did not necessarily establish the fact in dispute—"the vital question" whether deceased "intended to commit suicide." Even defendant's witness who saw deceased go into the stream was unable to decide whether she "threw herself in" or whether "she was trying to save herself from falling." Though deceased may have been afflicted with the insane delusion that some one was seeking her life, and though the evidence tending to prove that fact may have been undisputed, it did not necessarily follow that she intentionally destroyed her own life. If insane, the nature of her insanity was a matter to be considered by the jury in connection with her conduct and all the circumstances preceding and attending her death, in determining whether such death was accidental or caused by herself with suicidal intent. It may be true, in a purely academic sense, that "a presumption is not evidence;"

that "where evidence appears the presumption disappears, as light destroys darkness;" nevertheless, it also is true that defendant in this action was attempting to prove an affirmative defense; that the fact of death by drowning did not in itself give rise to the presumption of suicide; that if, upon a fair consideration of all the evidence, the theory of accidental death was as reasonable as the theory of suicide, it was the duty of the jury to adopt the former, and such, in effect, was the meaning of the charge.

The trial judge was talking to laymen not to lawyers. He was not writing a treatise on the law of evidence. An attempt on his part to define the distinction between a presumption of law and an inference of fact probably would have confused rather than have assisted an ordinary jury in properly deciding the simple issue involved in this action. The gist of his instructions, the rule applicable to this class of cases, was plainly and correctly stated by the trial judge when he said: "The plaintiff is entitled to recover unless on a fair consideration of all the evidence you are satisfied that the evidence does exclude every reasonable theory except that of suicide." Lindahl v. Supreme Court, I. O. F., 100 Minn. 87, 110 N. W. 358, 8 L. R. A. (N. S.) 916; Mutual Life Ins. Co. v. Wiswell, 56 Kan. 765, 44 Pac. 996, 35 L. R. A. 258; Boyton v. Equitable Life Assurance Co., 105 La. 202, 29 South. 490, 52 L. R. A. 687. "If the known facts are consistent with a cause of death which does not involve self-destruction, that cause must be accepted. After all the hypotheses which are consistent with an innocent or accidental death are eliminated, the conclusion of suicide may then be drawn. The burden is upon the defendant to show that the circumstances and conditions are inconsistent with any other reasonable cause of death than that of suicide; that is, it must eliminate and disprove all other causes of death which are consistent with the evidence before the jury is justified in inferring that the deceased committed suicide." Lindahl v. Supreme Court, I. O. F., supra.

As to the sufficiency of the evidence: In an action at law, when the facts are in dispute, or, if undisputed, are such that different impartial minds might fairly draw different conclusions

as to the ultimate fact in issue, such issue should be submitted to the jury. Harrison v. Railway Co., 6 S. D. 100, 60 N. W. 405; Reid v. Kellogg, 8 S. D. 596, 67 N. W. 687; McKeever v. Homestake Mining Co., 10 S. D. 599, 74 N. W. 1053; Dischner v. Association, 14 S. D. 436, 85 N. W. 998. This rule is especially applicable to the case at bar. While numerous circumstances preceding and attending the member's death, the condition of her health, the condition of her mind, her conduct on the evening before and on the morning of her death, the manner in which she was wandering through the fields, and the manner in which she entered the water, were established by uncontradicted evidence, the effect of such evidence, conceding it to be true—the fair and reasonable conclusion to be drawn therefrom as to whether deceased intentionally destroyed her own life or lost it accidently while fleeing from an imaginary danger—clearly was one concerning which equally intelligent and impartial minds might honestly differ. The question was one peculiarly within the province of a trial jury. Its decision cannot be disturbed. Therefore the trial court did not err, either in denying defendant's motion to direct a verdict, nor in denying its application for a new trial on the ground of insufficiency of evidence to sustain the verdict.

Its judgment is affirmed.

McCOY, J., taking no part in the decision.