NORMAN N. BLACKWOOD v. WILLIAM M. JONES.

149 So. 600.

Division A.

Opinion Filed July 20, 1933.

*E. W. & R. C. Davis, Waller & Pepper & W. C. Hodges,* for Plaintiff in Eror;

*F. W. Butler,* for Defendant in Error.

ELLIS, J.—Within the corporate limits of the town of Eau Gallie a tourist camp is located near the Dixie Highway, which extends through the town. The tourist camp

lies on both the east and west sides of the road and is near to the southern boundary of the town.

On January 25, 1930, a party, consisting of Mr. and Mrs. Charles Wright, Mr. Norman Blackwood and a young lady, who afterwards became the wife of Mr. Blackwood, left the City of Orlando about four o'clock in the afternoon in an automobile, called a Chevrolet coach, en route to Sebastian Inlet on the east coast. As the party passed through the town of Eau Gallie and approached the location of the tourist camp, Mr. and Mrs. Wright were seated on the back seat of the automobile, the young lady was seated beside Mr. Blackwood, who was driving the automobile. The party approached the site of the tourist camp about five-thirty o'clock the same afternoon traveling south upon the highway.

As the party approached the tourist camp, Mrs. William M. Jones, a married woman about forty-eight years of age, in good health and in possession of her sense of sight, and who was a guest at the camp which was owned and operated by Mr. E. A. Stout, undertook to cross the highway from the west side. She came down a short flight of steps near the west side of the road, paused a moment at the curb, looked toward the automobile approaching on the highway from the north, and proceeded to cross the highway walking in a southeasterly direction, which would be at an angle of approximately forty-five degrees from the point where she was standing on the west side of the road to a point due east. On arriving at the east side of the roadway she collided with the automobile driven by Mr. Blackwood, who, observing that it was apparently Mrs. Jones' intention to cross the highway in front of his approaching automobile, sought to avoid a collision with her by passing in front of her. When the automobile collided with Mrs. Jones the two left side wheels of the machine were on the dirt shoul-

ders of the roadway. The machine continued on its course until it came to a standstill about one hundred and seventy-five feet from the point of the collision, and entirely off the cement part of the roadway several feet away.

The impact of Mrs. Jones' body upon the automobile occurred on the right fender of the machine, the glass in the door was shattered, a dent appeared in the metal body of the automobile, and there was blood and particles of flesh on the handle of the door. Mrs. Jones was thrown to the cement pavement. Her head rested upon the pavement and her feet near the curb, if not on the dirt shoulders of the road, when her body was taken up by friends nearby. She sustained injuries from which she died at the Melbourne Hospital within a few hours.

In March, 1930, the husband of Mrs. Jones, whose name is William M. Jones, brought his action against Norman N. Blackwood, the driver of the automobile, for damages for the wrongful death of Mrs. Jones. There was a verdict for the plaintiff in the sum of two thousand, five hundred dollars and judgment entered for that amount. A motion for a new trial was denied and the defendant took a writ of error.

The young lady, who was a passenger in the automobile and who occupied a place on the front seat by the side of Mr. Blackwood, became the wife of Mr. Blackwood after the accident and testified at the trial.

Before proceeding further in the discussion of the legal aspects of this most unfortunate accident we wish to observe that the testimony of all the witnesses shows unmistakably a disposition on the part of each and every one to be accurate in detailing his or her observations, sincere in the effort to place before the court the facts as they were observed and freedom from all suspicion of bias in favor of or against either party. Information was given in detail

with meticulous care. Mr. Blackwood, the defendant in the case, testified with a freedom from any effort to unfairly place the fault upon Mrs. Jones that was equalled by the frankness and sincerity of Mr. Jones, the husband of the deceased woman. Mrs. Blackwood's testimony was also characterized by a very high degree of mental honesty. It is very apparent from the testimony of the witnesses and the parties to the action that it was their purpose to lay before the court the facts as they were observed and as they actually appeared to the observers and leave the matter to the unbiased judgment of the court and jury.

There is not the slightest evidence in the record of any attempt on the part of Mrs. Jones to commit suicide. Although there may exist no presumption that a person does not intend to destroy his or her own life, see 22 C. J. 95, and where such presumption exists it is rebuttable and a preponderance of evidence may be sufficient to rebut it, yet where circumstantial evidence is relied upon to establish suicide the facts shown must be such as to exclude any reasonable hypothesis of natural or accidental death. See Lindahl v. Supreme Court I. O. F., 100 Minn. 87, 110 N. W. Rep. 358, 8 L. R. A. (N. S.) 916; Sovereign Camp, W. O. W. v. Hodges, 72 Fla. 467, 73 South. Rep. 347.

In the case at bar the inference that Mrs. Jones intended to destroy her own life is no greater than that Mr. Blackwood intended to run her down with his automobile. Counsel for the plaintiff in his argument to the jury however asserted that the defendant sought to have the jury believe that Mrs. Jones "deliberately committed suicide." Counsel for the defendant objected to such statement as improper argument and moved the court to so intsruct the jury. That motion was overruled and counsel for the defendant excepted.

That ruling constitutes the basis for the third and fourth

assignments of error.   There is not a word in the testimony of Mr. Blackwood which conveys the slightest suspicion that he thought Mrs. Jones tried to commit suicide, or that he sought to make such impression upon the jury.   The assertion however by plaintiff's counsel that the defendant did seek to create such an impression upon the jury was not an "opinion," in the correct meaning of that term, which is a notion or conviction founded on probable evidence, Webster's International Dictionary, but was an arbitrary, dogmatic, and unjustified statement, the affect of which, with the court's sanction, injected into the proceedings an element calculated to prejudice the defendant in the minds of the jury as one who, by a possible or even probable fault amounting to negligence resulting in the death of Mrs. Jones, a presumably respectable and well esteemed lady, sought nevertheless to escape legal liability for damages in dollars by an aspersion upon her character in so far as the purpose to destroy her own life contained an element of wickedness, if indeed not an element of criminality.

No sophistry is tolerated in consideration of legal problems which seek to justify self-destruction as commendable or even a matter of personal right, and therefore such an argument is unsound which seeks to prove that an accusation unfounded in fact that a person sought to destroy his or her own life is not reprehensible but a normal thought reflecting in no wise upon the wickedness of the person accused of suicide.

Suicide at common law was dispunishable, yet the repulsion of the State for such an act was manifested by attaint of blood, confiscation of the instrument producing death, and public evidence of the disgrace of the deceased. Such manifestations by law are now by statute abolished, but the court may nevertheless take judicial notice that an act of suicide arouses in the minds of those who become

informed of it a feeling of repulsion although it may be commingled with sentiments of pity. To unjustly assert that a deceased person committed suicide reacts upon the accuser in proportion to the obvious falsity of the accusation. Therefore, for an attorney to state to the jury in his argument that the defendant sought his exoneration by unjustly accusing the victim of his negligence of suicide, is not to express an opinion resting on facts the probability of which is established, but is a statement of fact in the nature of evidence extremely prejudical to the person against whom the accusation is made and is not justified upon any theory of legitimate argument by counsel.

In this view of the case we are of the opinion that the error of counsel confirmed by the court in its refusal to eliminate the remark with instruction to the jury to disregard it produced an element of unfairness to the defendant in the trial that requires a reversal of the judgment.

It is so ordered.

DAVIS, C. J., and WHITFIELD, BROWN and BUFORD, J. J., concur.

TERRELL, J., dissents.