[No. 22337. Department One. September 17, 1930.]

LOCAL LODGE NO. 104 OF INTERNATIONAL BROTHERHOOD OF BOILER MAKERS, IRON SHIP BUILDERS AND HELPERS OF AMERICA *et al., Respondents,* v. INTERNATIONAL BROTHERHOOD OF BOILER MAKERS, IRON SHIP BUILDERS AND HELPERS OF AMERICA, *Appellant,* HARRY NORTON *et al., Defendants.*[1]

[1]Reported in 291 Pac. 328.

*Reuben Lee Crandell,* for appellant.
*Vanderveer, Beardslee & Bassett,* for respondents.

BEALS, J.—Defendant International Brotherhood of Boiler Makers (who will hereinafter be referred to as the defendant) is an international association of boiler makers and kindred craftsmen, organized as a labor union, having a regularly adopted constitution and by-laws, and engaged, *inter alia,* in the business of writing fidelity bonds for local or subordinate lodges, protecting such lodges against dishonesty on the part of their respective officers. Plaintiff, being a local or subordinate lodge of defendant, regularly organized pursuant to a charter issued by defendant, is located at the city of Seattle, and on January 1, 1927, had for its secretary and treasurer one M. J. Kelly. On or about the date last mentioned, defendant issued to plaintiff its fidelity or indemnity bond in the sum of three thousand dollars, whereby defendant agreed to indemnify plaintiff against any loss suffered by plaintiff through the dishonesty of M. J. Kelly in connection with his duties as secretary and treasurer of plaintiff.

During the month of October, 1927, M. J. Kelly absconded, and, upon an audit of his accounts being made, a shortage was discovered. Defendant having refused to pay the plaintiff anything on account of this shortage, this action was instituted, and upon trial thereof to the court sitting without a jury, findings of fact and conclusions of law were entered in plaintiff's favor, followed by judgment against defendant in the sum of $575.30, from which judgment defendant appeals.

Appellant admitted in its answer the issuance by it to plaintiff of the bond sued upon, but affirmatively

pleaded certain extracts from its constitution and by-laws, which sections purport to prescribe a method for handling the funds belonging to the local lodges, together with certain duties of the board of trustees in connection therewith. The two sections pleaded by appellant in its answer read as follows:

"When the funds in his (treasurer's) hands amount to fifty dollars ($50), all over that sum must be handed over to the chairman of the board of trustees, to be deposited in a bank, in the name of the brotherhood, the trustees to return the bank book to the treasurer. It shall be the duty of the treasurer to receive all money from the financial secretary, giving him receipt therefor; to keep an accurate account open to the board of trustees, taking a receipt for every item, to be kept in the order they occur in a book for that purpose, the same to be accurately preserved."

"DUTIES OF BOARD OF TRUSTEES. Sec. 8. The board of trustees shall see that all money over the sum of fifty dollars ($50) in the possession of the treasurer shall be deposited in such bank, trust company or saving institution, in the name of the International Brotherhood, and for such security as the subordinate lodge may direct, and no money shall be drawn out unless the draft is countersigned by the president, recording secretary and treasurer, and having the seal of the subordinate lodge on all such drafts. No amount shall be drawn or security engaged without the consent of a majority of the members in good standing at the meeting of the subordinate lodge. They shall audit the accounts of the subordinate lodge quarterly or oftener if necessary."

Appellant alleged that respondent had not followed the system outlined in the foregoing sections, and that, for this reason, appellant was in law exonerated from its liability upon the bond sued upon.

It appears from the testimony that a portion of the assets belonging to respondent consisted of a $1,000 Liberty bond, which bond was kept in a safety deposit

box, to which the secretary Kelly and Mr. L. W. Choteau, the chairman of the board of trustees, had access upon signing a joint request. During the month of July, 1927, in preparing the property and accounts of respondent for a quarterly audit, Messrs. Choteau and Kelly went to the safe deposit box and withdrew the bond, which they took to the office maintained by respondent for inspection by the auditing authority. The accounts having been examined and passed, Messrs. Choteau and Kelly returned to the safe deposit box to replace the bond therein. At some time prior to the locking of the box, Kelly surreptitiously substituted a worthless piece of paper for the bond, which he abstracted and thereafter converted to his own use. A portion of the proceeds of the bond was by Kelly deposited to the credit of respondent; the remainder, in the amount for which judgment was rendered herein against appellant, was embezzled by Kelly.

The trial court having found that Kelly's embezzlement was effected as hereinabove set forth, and appellant being a compensated surety and having, by the obligation sued upon, agreed to indemnify respondent in case respondent should suffer loss through the dishonesty of its secretary, Kelly, we do not find that the sections of its constitution relied upon by appellant avail appellant anything in resisting respondent's claim. The bond which respondent's secretary embezzled was not money, and was carefully kept in a safe deposit box which could be opened only on the joint order of the chairman of the board of trustees and the secretary-treasurer. We are of the opinion that such a security as this was not, by the sections of appellant's constitution above quoted, required to be deposited in a bank. We find no dereliction of duty on the part of respondent's officers in handling respond-

ent's property which operated to release appellant from liability to respondent on the bond here sued upon.

Appellant next contends that respondent has failed to exhaust its remedies within its organization and therefore cannot invoke the aid of the courts in seeking to force appellant to fulfill its bond. Appellant's constitution, by which respondent is also bound, provides that,

"Sec. 2. The International Brotherhood has full jurisdiction over all subordinate and district lodges and is the highest tribunal of the International Brotherhood.

"Sec. 3. The powers of the International Brotherhood, while in session, shall be legislative, executive and judicial."

Other sections establish a committee "on appeals and grievances" and provide for the making of reports by such committee to the International Brotherhood.

In support of its contention that the respondent, at the time it instituted this action, was not in a position to maintain the same because it had not exhausted its remedies within the association, appellant cites several authorities, the first being the case of *Herman v. Plummer,* 20 Wash. 363, 55 Pac. 315, in which it was held that the plaintiffs, who were members of a voluntary unincorporated association, were not entitled to wage an action to recover possession of certain property belonging to a local branch of a national society without having appealed to the executive committee of the national organization, which committee was, by the by-laws of the national society, declared to be "the court of final appeal in disputed questions arising between members of, in and between branches." It is recited in the opinion that no effort had been made by the plaintiffs to have the matters in controversy

between them and the defendants determined by the executive committee of the national organization.

The case cited might be in point had respondent instituted this action without making any claim to appellant based upon the matters alleged in respondent's complaint. In its answer, appellant expressly admits that respondent demanded from appellant a certain payment upon the cause of action set forth in respondent's complaint, and that appellant had refused such demand.

Other authorities are cited by appellant, but we fail to find them applicable.

It appears from the evidence that the international convention of appellant, which would normally have convened during the year 1928, was regularly postponed, and that no other international convention would convene until sometime during the year 1931. Under these circumstances, we think this a proper case for the application of the rule laid down in 19 R. C. L., at p. 1231, § 41, to the effect that, if the procedure outlined by the constitution of the organization is so complicated, and the expense and delay incident to the invoking of such machinery are so great, as, all being considered, to amount practically to a denial of justice, and indicate clearly that the procedure provided by the organization fails to provide adequate redress, the party deeming himself aggrieved may resort to the courts of the forum in the first instance. Under the circumstances disclosed by this record, we hold that respondent was not required to present its claim to appellant's international convention, but was, at the time it instituted this action, justified in invoking the aid of the courts of this jurisdiction. This conclusion is supported by the following authorities: *Brown v. Supreme Court I. O. F.*, 176 N. Y. 132, 68 N. E. 145;

*Lindahl v. Supreme Court I. O. F.,* 100 Minn. 87, 110 N. W. 358, 117 Am. St. 666, 8 L. R. A. (N. S.) 916.

It is also true that the rule which requires members of voluntary associations to exhaust their remedies within the order before applying to the courts for relief, applies primarily to controversies concerning matters of internal discipline, and not to disputes over money or tangible property, and that, in the latter class of cases, the right to resort to the courts should be held to be waived only by an express agreement to submit such controversies to some specified method of arbitration. The sections of appellant's constitution upon which it relies in connection with its contention which we are now discussing would seem to concern matters of internal discipline only, and not controversies such as this, based upon a written indemnity agreement uttered by appellant for a valuable consideration. Under the circumstances disclosed by this record, we therefore hold that this controversy is not governed by the provisions of appellant's constitution above quoted. 19 R. C. L., 1225 (§ 38); *Roxbury Lodge No. 184 I. O. O. F. v. Hocking,* 60 N. J. Law 439, 38 Atl. 693.

In its complaint respondent alleged that its secretary had embezzled the $1,000 Liberty bond above referred to and a sum of money in excess of $800. Upon the trial, the evidence disclosed the facts as hereinabove stated and as found by the trial court, and respondent's claim was modified to that extent. The evidence preponderates in favor of the findings of the trial court, and the judgment entered followed as of course.

Finding no error in the record, the judgment appealed from is affirmed.

MITCHELL, C. J., TOLMAN, PARKER, and MILLARD, JJ., concur.