[Civ. No. 21517. Second Dist., Div. Two. Apr. 6, 1956.]

CARL DeMONBRUN et al., Appellants, v. SHEET METAL WORKERS INTERNATIONAL ASSOCIATION et al., Respondents.

Leo S. Rich, Carl W. Berueffy and Albert M. Dreyer for Appellants.

Irl Davis Brett and Charles K. Hackler for Respondents.

ASHBURN, J.—This appeal turns upon the application of two doctrines, (1) res judicata based upon sustaining of demurrer, and (2) necessity of exhaustion of internal remedies by an aggrieved member of a union before appealing to the courts. The trial judge held that the complaint at bar is fatally defective when subjected to those tests and sustained without leave a general demurrer thereto.

This action was brought by 12 members of Local Union 108 of Sheet Metal Workers International Association; defendants are the International Association, Robert Byron, its general president, and certain officers and members of Local 108. The complaint avers that defendant Byron, assuming to act under article three (3), section 2(c)[1] of the constitution and ritual (which governs the International and the locals), declared on May 11, 1954, that he was then "taking over the management and control of Local Union 108" because certain of its officers "have conducted the affairs of such Local Union in a manner

[1]Section 2(c). "Management of local unions and councils. Whenever a local union or council or the officers or members thereof fail to establish and maintain, within their jurisdiction, wages and working conditions equivalent to those established and maintained within the jurisdiction of other local unions or councils in adjoining territories; fail to comply with orders or decisions or policies of this Association; fail to comply with the provisions of this Constitution; conduct the affairs of such local union or council in such manner as to promote or condone internal strife which is detrimental to the best interest of this Association or any local union or council thereof; or disregard the instructions, decisions or orders properly issued by any officer or tribunal of this Association, the General President, with the approval of the General Executive Council, shall have the authority to take over full control and management of the affairs of such local union or council. During such control and management such local union or council shall take no official action without the approval of the General President or a representative designated by him to supervise and direct the management and control. Such management and control shall continue until the causes thereof have ceased or until, after charges and trial, the charter of such local union or council is revoked.

"During such management or control of any local union or council, the General President shall have authority to take such action as he deems necessary to protect the interest and welfare of such local union or council and this Association, and the funds, property and membership thereof, including, but not limited to, the authority to suspend local union officers or business representatives, fill vacancies in such offices with any representatives of this Association or members of such local union, or call elections for that purpose, and impound the books, records, funds and property of any such local union or council."

which has promoted and condoned internal strife which is detrimental to the best interest of this Association and Local Union One Naught Eight."[2] Plaintiffs attack the validity of such assumption of control by President Byron, which was done with the approval of the general executive council; this they do upon the basis of allegations of bad faith on Byron's part, falsity of the reasons set forth in his telegram, absence of any good ground for such action by the general president, failure to serve advance charges or give an opportunity to refute charges, assumption of full control of the affairs of the local thus preventing holding of membership meetings, excluding members or officers from participating in the management of local affairs, expending large amounts of funds of the local without the vote of members (alleged to be required by section 14 of article 10 of the constitution and ritual), diversion to the International of large amounts of funds from the local though not due or owing to it, misapplication of other funds of the local, refusing to permit examination or audit of the accounts of the local as required by section 6 of article 13 of the international constitution, appointment of five business representatives of local 108 and payment of compensation to them, suspension of certain officers and business representatives of the local. The prayer is for injunction, temporary and final, restraining Byron and others "from assuming control or management of the affairs of Local 108 from in any manner interfering with autonomy of said Local 108 or the management and control of its affairs by its members and duly elected officers"; from expending funds or assets of the local unless authorized so to do by vote of the members; and a

[2]Telegram, which declares the seizure by the national president and which is addressed to the president of the local, is as follows:
"Ben Anisman
2008 West 7th Street
Los Angeles May 11, 1954
"Because certain officers of Local Union One Naught Eight, Los Angeles, California have conducted the affairs of such Local Union in a manner which has promoted and condoned internal strife which is detrimental to the best interest of this Association and Local Union One Naught Eight, I am, as of this date taking over the management and control of Local Union One Naught Eight pursuant to the authority vested in me by Article Three Section Two C of the Constitution of the Sheet Metal Workers' International Association. You are hereby instructed that Local Union One Naught Eight and its officers and business representatives shall take no official action without my approval and that no action taken by Local Union One Naught Eight, its officers or business representatives shall have any validity until further instructions from me.
Robert Byron."

judgment declaring that the action of Byron and the International in taking over control of the affairs of the local was illegal; requiring them to account for funds or assets expended or diverted without authorization of the membership of the local; declaring that suspension of certain officers and business representatives was illegal and void; and granting general relief.

This action was filed on May 9, 1955, and it appears that the telegram advising of the assumption of control by the general president was sent almost exactly one year prior to the filing of this suit. At the hearing of the demurrer and other pending matters an allegation of paragraph IX to the effect that plaintiff DeMonbrun had unsuccessfully attempted to appeal was withdrawn by consent and it was further stipulated in open court that plaintiffs ''could not at this time allege by amendment that they have exhausted the administrative remedies afforded to them and Local Union 108 by the Constitution and Ritual.''

The trial judge ruled that the action was barred by res judicata as to all matters other than the allegations of paragraphs XI to XIV inclusive of the first count and the suspension of certain officers and business representatives alleged in the second cause of action. This ruling requires an explanation of a former action entitled *Nichols* v. *Byron* and numbered 628638 in the superior court.[3]

Plaintiffs therein were nine members of Local 108 and seven of them are plaintiffs in the instant action; defendants in the Nichols case include the International Association and Robert Byron, its general president. Both are representative actions brought on behalf of Local 108 and its members. The former complaint alleges the same preliminary matters concerning the status and relationship of the Sheet Metal Workers

---

[3]Ordinarily a claim of res judicata cannot be sustained by taking judicial notice in aid of a demurrer (*Willson* v. *Security-First Nat. Bank,* 21 Cal.2d 705, 710-711 [134 P.2d 800]), but the rule is not without exceptions. The complaint at bar refers to the Nichols action, as do the demurrer and the judgment of dismissal. The trial judge undoubtedly took judicial notice of the Nichols file, and properly so in view of the allegations of the pleadings concerning the same (*Roberts* v. *Roberts,* 81 Cal.App. 499, 501-502 [253 P. 1112]; *Mann* v. *Mann,* 76 Cal.App.2d 32, 40-41 [172 P.2d 369]; *Estate of Wilson,* 116 Cal.App.2d 523, 527 [253 P.2d 1011]). Moreover, it was stipulated by counsel that the Nichols complaint be transmitted to this court on this appeal, and that places it before us as a part of the record to be considered by us. (See *Wilson* v. *Security-First Nat. Bank, supra,* at page 714.) The Nichols complaint is to be considered as if it were alleged in the instant pleading *in haec verba,* and counsel for the parties on appeal do not argue *contra.*

International Association and its Local 108; also as to the official positions occupied by Byron and others; complains of the same telegram of May 11, 1954, sent by Byron and asserting an immediate taking over of control of Local 108; challenges the factual basis for and legality of such assumption of control; alleges that the international will take over large assets of the local; that Byron has appointed two agents for the purpose of taking possession of property and records and has directed them to oust from their positions and usual places of work "all of the plaintiffs herein and any other officers, agents, and employees of said Local 108 who will not carry out the wishes of said defendant Byron." It also alleges that unless enjoined defendant Byron will prevent the election of any delegates to the approaching national convention; that defendants will take over the management and possession of the affairs and property of the local; will oust the plaintiffs from their positions in the management of its affairs; will take possession and control of $280,000 worth of bonds and a $40,000 bank account belonging to the local, and will disburse and expend the same to suit defendants' own purposes. This complaint was filed on May 13, 1954, two days after the date of the president's telegram. The prayer is for an injunction against taking over the affairs of the local, taking possession or making any disposition of any of its funds or other property, ousting or interfering with the employment or work of plaintiffs as officers of the local, interfering in any manner with the holding of elections of officers or delegates; or interfering with the due and regular administration of the affairs of the local by its own officers then in office, or those elected thereto in the future. The complaint contains no allegation of pursuit or exhaustion of internal remedies for plaintiffs' alleged grievances, such as appeal to the general executive council of the International and thence to the quadrennial convention.[4]

---

[4]*Article Nineteen.*

"Section 1. Any local union, council, officer, representative, or member of this Association or any officer, representative, or member of any local union or council thereof who is affected by any decision or order of a local union or council or a legally constituted tribunal thereof or by any decision or order of any general officer or officers, representative, or the General Executive Council of this Association shall have the right to appeal as provided in this Article.

. . . . . . . .
"Section 3(a) All appeals from decisions or orders of the General President, whether made initially or upon appeal, and all original appeals properly presented to the General Executive Council shall be filed in writing, in duplicate, with the General Secretary-Treasurer within

For this reason the general demurrer to the complaint was sustained without leave and judgment of dismissal entered on July 12, 1954. An appeal from the judgment was taken but was abandoned on May 24, 1955, and the ruling thus became final.

The trial judge in his ruling at bar confined the application of the rule of res judicata to matters other than those occurring after Byron took control of the local; counsel for respondent asserted on oral argument that res judicata applies to both counts of the complaint in their entirety. As will appear from the ensuing discussion the court agrees with respondents' counsel except with respect to alleged diversion and dissipation of funds of the local.

It will be observed from an examination of the foregoing summary of the contents of the Nichols and DeMonbrun complaints that both challenge the right of Byron, as international president, to take over the affairs of Local 108 in the manner in which he did; that the Nichols suit sought in advance to prevent by injunction the violation of the plaintiffs' alleged rights, and that the instant action seeks after the event to undo the fact and effects of such seizure of control by Byron. Nichols complains of what will happen as an incident to such seizure if it takes place, and the instant complaint complains that those things did occur, were wrongful and should be undone. Except as to alleged dissipation of funds of the local the two suits are but attempts to secure different types

---

sixty (60) days after the decision or order from which such appeal is taken and shall include all documentary evidence and argument which the appealing party or parties may deem necessary for the proper consideration of the appeal. The General Secretary-Treasurer shall thereupon compile such other evidence and data, upon which the decision or order appealed from was based, as may appear necessary for a fair and complete presentation of the appeal and shall mail the same, together with the appeal and other documents submitted by the parties in connection therewith, to the parties and to each member of the Executive Council.

. . . . . . . . . . . .
"Section 3(c). The decision of the General Executive Council shall be by majority vote of those participating and shall be final unless changed upon appeal to the General Convention, and the General Secretary-Treasurer shall furnish each party to the appeal, in writing, by registered mail, a copy of the decision of the Executive Council.

"Section 4. Unless otherwise provided in this Constitution, all appeals from decisions made by the Executive Council shall be referred to the grievances and Appeals Committee for consideration and report and the decision of the General Convention shall be recognized and accepted as final. All such appeals must be filed with the General Secretary-Treasurer within sixty (60) days from date of decision by the General Executive Council."

of relief upon the same cause of action. ▮ "If a different title, right or obligation is pleaded in the second action, the cause of action is different, even though the relief sought is the same. (*Ball* v. *Stephens,* 68 Cal.App.2d 843, 851 [158 P.2d 207].) But if the second is based upon the same right or obligation the cause of action is the same even though different or additional relief is sought." (*Ideal Hardware etc. Co.* v. *Department of Emp.,* 114 Cal.App.2d 443, 448 [250 P.2d 353].) To the same effect see *Owl Drug Co.* v. *Bryant,* 115 Cal.App.2d 296, 302 [252 P.2d 69]; 50 C.J.S. § 608, p. 31; 30 Am.Jur., § 176, p. 919. ▮ A cause of action is the right to secure redress for violation of an obligation owing to the claimant. Though phrased in varying ways, this is the result of the authorities. In *Frost* v. *Witter,* 132 Cal. 421, 426 [64 P. 705, 84 Am.St.Rep. 53], the court said: "The action therefore springs from the obligation, and hence the 'cause of action' is simply the obligation." Again: "The 'cause of action' is therefore to be distinguished, also, from the 'remedy,'—which is simply the means by which the obligation or the corresponding action is effectuated,—and also from the 'relief' sought. (Pomeroy on Pleading and Practice, § 453.)" This test of identity of causes of action applies in the field of res judicata as well as other areas, such as introduction of a new cause of action after running of the applicable statute of limitation. In *Panos* v. *Great Western Packing Co.,* 21 Cal.2d 636 [134 P.2d 242], an action for personal injuries, plaintiff had charged defendant with one type of negligence and, having failed, brought a new action alleging a different act of negligence. At page 638, the court said: "In an effort to avoid application of this settled doctrine [res judicata] to the facts of this case, plaintiff contends that the present litigation is based upon a cause of action separate and distinct from that underlying the prior litigation because the negligence charged to defendant in this action differs from the negligence charged against it in the prior action. In so contending, plaintiff misconceives the nature of his cause of action. The cause of action is simply the obligation sought to be enforced. [Citing cases.] The negligence of defendant alleged in the prior action and that alleged against it in this action represent but different invasions of plaintiff's primary right and different breaches of the same duty that it owed to him. There was one injury and one cause of action." (To the same effect see *Klopstock* v. *Superior Court,* 17 Cal.2d 13,

20 [108 P.2d 906, 135 A.L.R. 318]; *Smith* v. *Los Angeles Bookbinders Union,* 133 Cal.App.2d 486, 496 [284 P.2d 194].)

Plaintiffs' major grievance in each instance—Nichols and DeMonbrun—is the same, violation of the right of Local 108 to autonomy, to immunity from seizure of its property and exclusive conduct of its affairs by the general president. Whether they sue to prevent or to redress the alleged wrong their basic cause of action is the same and the final judgment in the Nichols case would be a bar to this entire action were it not for the wrongful diversion of property alleged in the first count.

The acts of seizure of complete control, ouster of local officials from participation in management, suspending of membership meetings, refusal to permit audits of accounts of the local,—all these things are subject to appeal within the union for they clearly involve orders and decisions of the president. A holding that they cannot be attacked in the courts until the appeal remedy has been exhausted is binding in a later suit seeking redress for these same things without first pursuing an internal appeal.

As will appear, the matter of dissipation of local funds does not fall within the appeal provisions of the constitution and hence a judgment based upon failure to exhaust internal remedies cannot be res judicata with respect thereto. The former complaint alleged that defendants intended to "disburse and expend the same [funds and property of local] to suit the purposes of said defendants." This allegation is not the equivalent of the present charge that defendants "have diverted to the defendant International large sums of the funds of said Local 108 which were not due or owing to defendant International and have expended additional funds of Local 108 otherwise than for the legitimate purposes of said Local 108." The case of *Keidatz* v. *Albany, infra,* is applicable, and discloses that the former judgment is not a bar on this phase of the present complaint.

The suspensions averred in the second cause of action fall within the bar of res judicata. They are suspensions from exercise of the functions of an officer or business representative, not suspensions of membership, and are specifically authorized by article three (3), section 2(c) quoted in footnote 1, *supra.* Such suspensions may be made by the president when in control of the local and any abuse of this power must be redressed within the International Union, if at all.

The fact that the former judgment was based upon the

sustaining of a demurrer to the complaint without leave to amend does not affect the foregoing conclusions. ▇ *Keidatz* v. *Albany*, 39 Cal.2d 826, 828 [249 P.2d 264]: "Since the former judgment was entered after a general demurrer had been sustained with leave to amend, it is necessary to determine the scope of the doctrine of res judicata in such circumstances. The procedural effect of such a judgment appears to be *sui generis*. It is a judgment on the merits to the extent that it adjudicates that the facts alleged do not constitute a cause of action, and will, accordingly, be a bar to a subsequent action alleging the same facts. [Citing cases.] Moreover, even though different facts may be alleged in the second action, if the demurrer was sustained in the first action on a ground equally applicable to the second, the former judgment will also be a bar. [Citing cases.] If, on the other hand, new or additional facts are alleged that cure the defects in the original pleading, it is settled that the former judgment is not a bar to the subsequent action whether or not plaintiff had an opportunity to amend his complaint." (To the same effect see *Crowley* v. *Modern Faucet Mfg. Co.*, 44 Cal.2d 321, 323 [282 P.2d 33].) ▇ Of course, one representative suit is res judicata of another such suit when based upon the same cause of action. (*King* v. *International Union etc. Engineers*, 114 Cal.App.2d 159, 164 [250 P.2d 11].)

Except as to dissipation of the local's funds, the present action is not one based upon a new cause accruing after the Nichols judgment (*cf.* 15 Cal.Jur., § 214, p. 179; 50 C.J.S. § 669b, p. 115), as appellants vainly contend. Their argument is but another assertion in different form of an invasion of the right of the local to autonomy, the fundamental claim that has been adjudged against them. Counsel's argument in this behalf is deduced from the fact of dismissal of an action brought by Byron against DeMonbrun and others (*Byron* v. *Nichols, et al., No. 628724*, in the superior court) to enjoin them from interfering with Byron's taking over the affairs of the local pursuant to his constitutional power. That action was filed on May 17, 1954; a preliminary injunction was granted on July 28, 1954, and the action voluntarily dismissed without prejudice on May 2, 1955.[5] It is argued that a voluntary dismissal is the equivalent of a reversal and carries with it a right of restitution; that "[b]y virtue of this injunc-

---

[5]The pertinent portions of this record are before us in the same manner as *Nichols* v. *Byron*. (See footnote 3, *supra*.)

tion, defendant Byron as General President of the International took over the control and management of the affairs of Local 108''; and that, the authority for such possession having been reversed in effect, that possession must be surrendered by way of restitution. Cases cited by appellants are *Moore* v. *Maryland Casualty Co.*, 100 Cal.App. 658, 663 [280 P. 1008] ; *Asevado* v. *Orr*, 100 Cal. 293, 299 [34 P. 777] ; *Frahm* v. *Walton*, 130 Cal. 396, 398 [62 P. 618] ; and *Dowling* v. *Polack*, 18 Cal. 625, 627. They are not in point. All of them deal with the liability of sureties upon an injunction bond, and for the purpose of determining that question it is held that voluntary dismissal of the suit is equivalent to a court's holding that the injunction was wrongfully issued. The general rule is that the voluntary dismissal of an action before trial is without prejudice to its immediate renewal, and adjudges nothing (*Estate of Cook*, 205 Cal. 581, 584 [271 P. 1083] ; *Breznikar* v. *T. J. Topper Co.*, 23 Cal.App.2d 298, 303 [72 P.2d 895]). It is unnecessary to inquire whether the rule invoked by appellants could be extended to cover the matter of restitution as the result of dismissal of the action where there is something to be restored,—where possession has been taken by virtue of the injunction. It is not actually alleged that control and management of the affairs of the local were taken over by virtue of or pursuant to the injunction order. The allegations are that on the basis of the third amended complaint Byron obtained a preliminary injunction against DeMonbrun and others ''from interfering with the defendant Byron's control of Local 108,'' and that ''From and after the issuance of the aforesaid preliminary injunction and until the present time, defendant Byron, as general president of defendant International, acting by and through defendants Artman, Anisman, and others, has assumed full and complete control and management of the affairs and assets of Local 108.'' It thus appears that the argument of appellants' counsel does not have foundation in fact and therefore must be rejected whatever might be its merit if the facts were as assumed by them.

The trial judge treated as new matter, not governed by res judicata, the allegations of paragraphs XI to XIV of the first count of the complaint and paragraphs II to VII of the second cause of action.[6] Said paragraphs XI to XIV refer

---

[6] A demurrer will not lie to a portion of a single cause of action (2 Witkin Cal. Proc., p. 1474), but the ruling that the cause

to matters occurring after Byron took over control and management of the local, such as preventing the holding of membership meetings, excluding members and officers from participation in management of the local's affairs, expending funds of the local without authorization of the membership, diverting to the international large sums of money belonging to the local, refusing to permit examination and audit of the records, etc. The second cause of action avers a series of suspensions of local officers or business representatives, all occurring on February 11, 1955, and based upon charges prepared by Byron himself but signed by other defendants, "which charges alleged that plaintiff had violated the Constitution of defendant International by defending the action brought against him by defendant Byron as alleged in Paragraph X of the First Cause of Action." The court held that these averments stated no cause of action because plaintiffs had not pursued or exhausted their internal remedies, such as appeal. No allegation of the taking of any appeal appears in the complaint and it was stipulated at the hearing (as recited in the minutes and the judgment) that plaintiffs could not make such an averment by way of amendment. The applicable provisions of the constitution are copied in footnote 4, *supra.*

Appellants argue that "plaintiffs had no internal remedies to exhaust" and "plaintiffs are not complaining of any decision or order, but of the maladministration of the affairs of the Local by the defendants and the betrayal of their stewardship. The provisions of the union's Constitution relating to appeals are therefore inapplicable. See *Polin* v. *Kaplan,* 257 N.Y. 277 [177 N.E. 833]." With respect to the suspensions alleged in the second count they assert there was no right of appeal because, forsooth, there was no valid basis for the suspensions. Respondents, relying upon *Holderby* v. *International Union etc. Engrs.,* 45 Cal.2d 843 [291 P.2d 463], assert that there was a clear right of appeal and failure to pursue it waived any right to relief through the courts. The constitution and ritual, in section 8 of article 19, says: "No member shall appeal to the Civil Courts for redress until after having exhausted all rights of appeal provided by this Constitution."

The case of Polin, cited by appellants, points to the necessity of careful construction of the constitution in order

is barred as to certain paragraphs may be accepted as a statement of a part of the reasons for sustaining the demurrer to the complaint as a whole.

to determine the scope of the phrase, "any decision or order" of the general president (art. 19, §§ 1 and 3(a)). In effect Polin holds that an action brought by a member of a local union against one of its officers for misappropriation of funds will lie without pursuing any appeal "to the Local Union from its own or its officers' decisions." The court said there had been no such decision and the action would lie. It did not discuss the necessity of seeking a decision but ruled in effect that that was not a condition to maintenance of a civil action.

Labor Relations and The Law, at page 934, says: "Where mishandling of finances is involved, the requirement of exhausting internal remedies is much less stringent. In *Local Lodge No. 104* v. *International Brotherhood of Boilermakers* (1930), 158 Wash. 480 [291 P. 328] the court said that exhaustion of remedies was required primarily in matters of internal discipline and was not required in disputes over money or tangible assets. In the latter cases, resort to the courts would be barred only on express agreement to submit such controversies to a specified method of arbitration. Frequently the court avoids the requirement by finding that the constitution provides no internal remedies. Therefore, immediate resort to the court is proper." Of course if there is no appeal provided by the governing instrument that ends the problem. (*Harris* v. *National Union etc. Cooks & Stewards*, 98 Cal.App.2d 733, 736 [221 P.2d 136]; *Grand Grove U. A. O. of D.* v. *Garibaldi Grove No. 71*, 105 Cal. 219, 224 [38 P. 947]; *Marchitto* v. *Central R. Co. of New Jersey*, 9 N.J. 456 [88 A.2d 851]; *Sullivan* v. *Barrows*, 303 Mass. 197 [21 N.E.2d 275, 278]; 87 C.J.S. § 49, p. 857.) And no appeal is necessary where it affirmatively appears that it would be futile. (*Elevator Operators etc. Union* v. *Newman*, 30 Cal.2d 799, 810 [186 P.2d 1]; *Holderby* v. *International Union etc. Engrs., supra*, 45 Cal.2d 843, 847 [291 P.2d 463].)

 Not a narrow but a reasonable and practical construction is to be given to article nineteen, and especially § 3(a) thereof, with a view to accomplishing the objectives disclosed by the instrument as a whole. Anent this matter of construction, *Smetherham* v. *Laundry Workers' Union*, 44 Cal. App.2d 131, 137 [111 P.2d 948], says: "Any uncertainty which exists must be considered in the light of the intention of the parties and that intention must be determined from a consideration of the language employed and the subject-matter of the by-laws. . . . Where one construction would make the

contract unusual or extraordinary, courts are to disregard such construction if the contract may reasonably be subject to a construction which is fair and just. Indeed, it must be presumed that the parties intended the contract to be reasonably construed.''

No difficulty is encountered with respect to the suspensions of officers and other representatives of the local, banning meetings of members of the local, excluding them from participation in active management and like matters; all these things are encompassed by the seizure power (see footnote 4, *supra*; *Davis* v. *International Alliance etc. Emp.*, 60 Cal.App. 2d 713, 719 [141 P.2d 486]) ; and must be remedied, if at all, by an internal appeal from the exercise of that phase of the power. (*Cf. Stoica* v. *International etc. Emp.*, 78 Cal.App.2d 533, 538, 540 [178 P.2d 21] ; *Killeen* v. *Hotel & R. Emp. etc. League,* 84 Cal.App.2d 87, 93 [190 P.2d 30].) Clearly, all of these matters involve the decision or order of the general president.

There can be no dispute about the fact that a disbursement of moneys by the general president does not constitute an ''order'' in the sense of the constitutional provision. The word ''decision'' like most others, expands or contracts with the mental images of the speaker—a word is but ''the skin of a living thought''—and the application of that word to dissipation of local funds presents practical considerations which are not without significance. The allegations of the complaint are quite general, namely, that Byron has ''diverted to the defendant international large sums of the funds of said Local 108 which were not due or owing to defendant international,'' and that he has ''expended additional funds of Local 108 otherwise than for the legitimate purposes of said Local 108.'' But the record (including the trial judge's opinion) indicates that all parties treated these averments as sufficient in the face of the general demurrer. Moreover, they are fortified by factual allegations that defendant Byron refused to permit the trustees of the local to examine financial statements, books or records of the local or to conduct an audit of the same. Byron, having assumed full charge of the affairs of the local, stands in a fiduciary relationship and these allegations in the aggregate make a showing of a right to an accounting in a court of equity unless there are internal remedies which must be exhausted in advance of court action.

These things, diversion and misapplication of funds and other property, go on from day to day; as alleged, they

amount to mismanagement and misapplication on the part of the general president, whose acts they are. In a broad sense, each one requires a decision by him,—a making up of his mind as to a course of action to be followed. They have been occurring since May 11, 1954, according to the complaint. If it be said that an appeal lies therefrom, a practical problem arises as to how often must an appeal be taken and does it hold any likelihood of success. If misappropriations are decisions, each one of them would be a ground for appeal, but the members who would complain have no means of learning of them immediately or directly; they are excluded from participation in active management and are denied access to the books and records. The best they can do is to demand an accounting and when that is refused appeal from that denial (if it be construed to be a decision).

It appears that the appeal which must be taken is one from a decision of the general president and it goes directly to the general executive council (Art. Nineteen, § 3(a), quoted in footnote 4, *supra*). The principal office of the International Association is in Washington, D. C. (art. one, § 1). The general executive council meets when and where the general president directs (art. six, § 1(a)), and he ordinarily acts as chairman of the meeting (§ 1(b)); this council is composed of the said president and eleven general vice presidents (art. six, § 1(a)) who are nominated by the president (art. two, § 7; art. two, § 9), and who have only such authority and duties as are specified by him (art. four, § 1). When reviewing actions of the president, especially maladministration of the funds of the local, this tribunal offers little certainty of an unbiased hearing or decision; this is true. even though the president cannot participate in the particular hearing (art. eighteen, § 3(e)). In event of dissatisfaction with the ruling of the executive council the appellant must pursue his appeal to the general convention (footnote 4, *supra*; *Bush* v. *International Alliance*, 55 Cal. App.2d 357, 365 [130 P.2d 788]; *Hughes* v. *American Trust Co.*, 134 Cal.App. 485, 488 [25 P.2d 491]), where it is handled by a Grievances and Appeals Committee before going to the members assembled in convention. The members of this committee are appointees of the president and the nominations are made just before the convention (art. seven, § 7); they function only quadrennially for the convention is held only that often (art. seven, § 1). During the pursuit of his appeal the appellant must accept the challenged decision on

penalty of having the appeal rejected for failure so to do (art. nineteen, § 5). The complaint at bar (filed May 9, 1955) alleges that the next annual meeting after Byron took over the local was to be held at Montreal, Canada, during the week of August 16, 1954, which means that any diversions of funds made after that date would be immune to correction until the 1958 convention; and meantime the dissatisfied members of the local would have to submit to the diversions of which they would complain on appeal. When such an appeal is finally heard, the general convention "shall have the right to affirm, amend, modify, or reverse any decision which has been submitted to them on appeal, and fix the penalty, if any, in connection therewith." (Art. nineteen, § 7.) There are no penalties prescribed by the constitution which could apply to a situation such as that described by the instant complaint, and it would be impossible for the appellate tribunal to make any order for repayment of any money to the local. It could rule that appellant is entitled to the accounting demanded by him but it could go no further; it could not take the accounting or effectively declare restoration of any amount found owing to the local. Concerning the propriety of a money judgment against the treasurer of a local union for funds which he had refused to turn over to its trustees, the Supreme Court said, in *Grand Grove U. A. O. of D.* v. *Garibaldi Grove No. 71, supra,* 105 Cal. 219, 224, "as the payment of money or the delivery of property cannot be enforced by the machinery of these organizations, the aid of the judicial tribunals of the state is required."

*Bell* v. *Sullivan,* 183 Misc. 543 [49 N.Y.S.2d 388, 390] : "None of these provisions [of constitution and by-laws] is adapted toward furnishing the relief sought in this action; nowhere therein is there jurisdiction vesting in any of the association tribunals power to compel an accounting and for the awarding of judgment thereon, or any process or means provided to compel obedience and payment other than punitive impositions. It is very clear that no such state of affairs was anticipated and hence it is not surprising that it is unprovided for.

"Assuming, *arguendo,* that under the mentioned articles jurisdiction resides in the organization agencies to direct an accounting and payment under penalty of expulsion, which is the maximum of punishment which can be imposed, it would be wholly unavailing and utterly inadequate, for though this would be the extreme punishment which could

be inflicted upon the individual defendants, yet it would not enable plaintiffs to enforce payment and so resort to union tribunals would, under the circumstances, be an entirely and wholly futile procedure, so that resort to a court becomes an imperative necessity. There is no other mode by which plaintiffs can obtain adequate relief except by such a suit as this and the employment of coercive processes for enforcement of the redress which a court of equity might award, as provided for by law.''

■ To the effect that the long, burdensome and fruitless procedure prescribed by the constitution under discussion does not constitute a real remedy which must be pursued in advance of court action, see *Local Lodge No. 104* v. *International Brotherhood of Boilermakers*, 158 Wash. 480 [291 P. 328, 330] ; *Nissen* v. *International Brotherhood of Teamsters*, 229 Iowa 1028 [295 N.W. 858, 866, 141 A.L.R. 598] ; *Collins* v. *International Alliance of Theatrical Stage Emp.*, 119 N.J.Eq. 230 [182 A. 37, 45, 46] ; *Fritz* v. *Knaub*, 57 Misc. 405 [103 N.Y.S. 1003, 1009, 1010] ; *Bricklayers' P. & S. Union* v. *Bowen*, 183 N.Y.S. 855, 863; 168 A.L.R. 1473, Ann. In the Local Lodge case, *supra*, the court said at page 330 : ''It appears from the evidence that the international convention of appellant, which would normally have convened during the year 1928, was regularly postponed, and that no other international convention would convene until some time during the year 1931. Under these circumstances we think this a proper case for the application of the rule laid down in 19 Ruling Case Law, at page 1231, § 41, to the effect that, if the procedure outlined by the constitution of the organization is so complicated, and the expense and delay incident to the invoking of such machinery are so great, as, all being considered, to amount practically to a denial of justice, and indicate clearly that the procedure provided by the organization fails to provide adequate redress, the party deeming himself aggrieved may resort to the courts of the forum in the first instance. Under the circumstances disclosed by this record, we hold that respondent was not required to present its claim to appellant's international convention, but was, at the time it instituted this action, justified in invoking the aid of the courts of this jurisdiction. This conclusion is supported by the following authorities : *Brown* v. *Supreme Court I. O. F.*, 176 N.Y. 132 [68 N.E. 145] ; *Lindahl* v. *Supreme Court I. O. F.*, 100 Minn. 87 [110 N.W. 358, 8 L.R.A. N.S. 916, 117 Am.St. Rep. 666].''

It cannot fairly be said that an internal appeal or series of appeals from fiscal mismanagement of the daily affairs of the local could be anything other than a futile pursuit of a putative remedy. The fair construction of the words "decisions and orders" in article nineteen, section 3(a), is that they do not include misappropriations or misapplications of the moneys or other property of the local in circumstances described by the complaint at bar. The Holderby decision, *supra,* is not opposed to this conclusion. It proceeds upon the assumption of an existing right of appeal—from suspension or expulsion of a member—one which clearly did exist. Our construction leaves the appeal provisions of the instant constitution in harmony with the general law on the subject.

*Washington Local Lodge No. 104* v. *International Brotherhood of Boilermakers,* 28 Wn.2d 536 [183 P.2d 504, 509, 189 P.2d 648], says that the "weight of authority appears to be in accord . . . to the general effect that where the controversy is financial in nature, rather than wholly disciplinary, the courts make an exception to the general rule that it will not adjudicate the question presented." *Nissen* v. *International Brotherhood of Teamsters, supra,* 229 Iowa 1028 [295 N.W. 858, 866]: "Such remedies need be exhausted before resort to the courts only where the question is purely social, involving discipline or the conduct or standing of a member. But if property rights are involved in the absence of an express agreement to exhaust the remedies provided within the association, the member may resort to the courts without using the within-the-Union remedies. And where property rights are involved the member need not first pursue the remedies within the association, if they would be futile, illusory, or vain." This case was cited with apparent approval in *Elevator Operators etc. Union* v. *Newman,* 30 Cal.2d 799, at 810 [186 P.2d 1]. (To the same effect see *Local Lodge No. 104* v. *International Brotherhood of Boilermakers, supra,* 158 Wash. 480 [291 P. 328, 330]; *Robinson* v. *Nick,* 235 Mo.App. 461 [136 S.W.2d 374]; Dangel and Shriber on Labor Unions, p. 232.) In *Bell* v. *Sullivan, supra,* 49 N.Y.S.2d 388, 389, it is said: "Such provisions deal with membership status, rights, violations of constitution, by-laws, rules and regulations, and matters pertaining to punishment, basically intra-union affairs." *Dusing* v. *Nuzzo,* 178 Misc. 965 [37 N.Y.S.2d 750, 752]: "Where the management in control of a labor union . . . dissipates union funds without accounting and where redress for any of these irregularities cannot be obtained

through constituted local or international officials the court will intervene to grant relief."

If the court were to conclude that the phrase, "decision or order" is broad enough to cover the matter of mismanagement and misappropriation of funds, it would nevertheless follow that resort to the courts is not precluded thereby. The case at bar has now been reduced to a claim for accounting and recovery of moneys wrongfully misappropriated; all else is barred by the former judgment. There is no question of discipline or incidental damages here involved. ██ It has long been the rule in this state that a controversy over property rights, one confined to such rights, affords good ground for equitable relief notwithstanding the existence of a charter provision for an internal appeal. *Oil Workers Intl. Union* v. *Superior Court,* 103 Cal.App.2d 512, 571 [230 P.2d 71] : "In fact, as early as 1888 it was recognized in this state that 'Courts will interfere for the purpose of protecting property rights of members of unincorporated associations in all proper cases, and when they take jurisdiction, will follow and enforce, so far as applicable, the rules applying to incorporated bodies of the same character.' (*Otto* v. *Journeymen Tailors' P. & B. Union,* 75 Cal. 308 [17 P. 217, 7 Am.St.Rep. 156].)" *Ellis* v. *American Federation of Labor,* 48 Cal.App.2d 440, 445 [120 P.2d 79] : "The undenied allegations of the verified complaint sufficiently show property rights of the local unions in the Central Council to justify the interposition of the courts. 'Something more than mere membership in a voluntary association is embraced in this case. It involves the life of the organization known as Local 263, with its funds and property, its associations and reputation, and all the rights and privileges of its members. . . . Their right to enjoy whatever advantages membership in this union would bring them in their calling could not be taken away by the unlawful action of the general executive board. In our opinion property rights are involved and equity will assume jurisdiction to protect them.' (*Barbrick* v. *Huddell,* 245 Mass. 428, 435, 436 [139 N.E. 629].)"

Although the Supreme Court in the Holderby opinion, *supra,* 45 Cal.2d 843, limited some of the language of *Weber* v. *Marine Cooks' & Stewards' Assn.,* 93 Cal.App.2d 327 [208 P.2d 1009], it did not directly or impliedly overrule the case, which involved an attack upon a new constitution that was held not to have been validly adopted. The litigation involved the right to control of the entire property of the union and

the nature of the litigation was thus summarized at page 340: "When a common fund is maintained for the benefit of a number of persons bound together by association and a contract exists between the association and its members directing the course of action in changing the personal and property rights of the members, and an effort is made to break the contract and substitute another which impairs and injures the rights of the beneficiaries, then the successful maintenance by a few for the benefit of many of an equitable action resulting in the protection of the contractual rights as originally established is ground for allowing attorney's fees to those who battle to redress the wrong and maintain the previous personal rights although no actual court order to return the erroneously spent funds has been made." It was held that in this situation there was no necessity of invoking or exhausting any internal remedy and the Supreme Court denied a hearing. The Holderby case, *supra,* does not mention any of the other cases just cited and certainly did not intend to overrule without making any mention of them.

■ As stated in *Eatwell* v. *Beck,* 41 Cal.2d 128, 136 [257 P.2d 643], "it is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court." Holderby, *supra,* was an action by a union member who had been suspended and then expelled from membership; he sought reinstatement and damages but did not exhaust his remedy within the union. The Supreme Court held that this last fact was fatal to his action. The primary right involved was reinstatement; incidental thereto damages were claimed. There was no other property right in issue. None was claimed in the briefs. Against this background, the court said: "The plaintiff claims that an exception to the general rule made it unnecessary that he pursue the internal remedies for review before commencing this action. In *Weber* v. *Marine Cooks' & Stewards' Assn.,* 93 Cal.App.2d 327 [208 P.2d 1009], it is stated at page 338 that 'where an organization has violated its own laws and arbitrarily violated a member's property rights the rule of exhaustion of remedies by appeal to a higher body within the organization need not be adhered to before direct resort to a judicial tribunal.' (See *Harris* v. *National Union etc. Cooks & Stewards,* 98 Cal. App.2d 733, at 736 [221 P.2d 136].) If such an exception is construed as broadly as the quoted language would permit, it would make it unnecessary for any party with a justified

grievance involving personal and property rights against an organization of which he is a member, including the plaintiff in the present case, to have the matter corrected internally by the machinery provided before resorting to the courts. The exception in such a case would swallow the rule, a result clearly not intended by the cases relied on as authority for the broad interpretation sought by the plaintiff to justify this action. It is only when the organization violates its rules for appellate review or upon a showing that it would be futile to invoke them that the further pursuit of internal relief is excused. The violation of its own rules which inflicts the initial wrong furnishes no right for direct resort to the courts." (P. 871.) As previously observed, Holderby did not overrule the Weber case, *supra.* In effect it held that incidental and consequential damage growing out of expulsion (a disciplinary measure) does not render the appeal procedure inapplicable or obviate the necessity of exhausting it before invoking the aid of the courts. The incident was not permitted to control the principal. But in those cases where the property wrong is the gravamen of the complaint the immediate resort to the courts is still recognized in the authorities and Holderby, *supra,* does not state the contrary.

The ruling of the trial court in the instant case to the effect that plaintiffs had an internal appeal with respect to misappropriation and misapplication of funds by General President Byron and that their inability to allege that they had exhausted internal remedies precluded maintenance of the action is erroneous. As a demurrer cannot be sustained to only part of a single cause of action (2 Witkin Cal. Proc., p. 1474; *Reed* v. *Drais,* 67 Cal. 491, 492 [8 P. 20]; *Fairbairn* v. *Eaton,* 6 Cal.App.2d 264, 269 [43 P.2d 1113]), the judgment cannot be sustained, although the ruling was correct in other particulars.

The judgment is reversed.

Moore, P. J., and Fox, J., concurred.