MARGARITA MERCADO RIERA ET AL., Plaintiffs and Appellants, v. MARIO MERCADO RIERA ET AL., Defendants and Appellees.

No. R-71-158.     Decided October 24, 1972.

*Benjamín Ortiz* and *Charles R. Cuprill* for Mario Mercado Riera, his wife María Luisa Parra Mercado, Eufemia Eileen Mercado Parra and her husband H. Murray O'Hanlon. *José M. González Romanacce* for Adriana Luisa Mercado Parra and her husband Patrick J. Wilson. *Carlos E. Colón* for Partnership under receivership Mario Mercado e hijos. *Sarah Torres Peralta* for the Heirs of Adrián Mercado Riera, composed by Daisy J. Widow of Mercado and Adrián, José, Mario, and Luis Alberto Mercado Jiménez.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

We must decide whether the defense of res judicata lies in an action for damages because said damages could and should have been claimed in a previous action in which the dissolution of a partnership between the present litigants was decreed on account of fraudulent acts of appellee Mario Mercado Riera which, it is affirmed, caused "serious and incalculable damages to the partnership and its members" (appellants were members of that firm), the numerous prejudicial

acts of the aforesaid appellee as well as the restitution to the company on his part of several and substantial amounts of funds being specified in the dissolution judgment.

We conclude that the judgment rendered by the trial court sustaining the defense of res judicata should be affirmed, and by virtue thereof, the complaint dismissed.

On May 26, 1967, the Superior Court of Puerto Rico, Ponce Part, issued an opinion and judgment in the civil action No. CS-57-2295 decreeing the dissolution of the firm Mario Mercado e Hijos, composed of the managing partner Mario Mercado Riera and his daughters Eufemia Eileen and Adriana Luisa with a participation of 57.50%; Margarita Mercado Riera (11.25%); Pastor S. Mandry (10.00%); and the Heirs of Adrián Mercado Riera (21.25%). In the dispositive part of the dissolution judgment it is provided, besides, that Mario Mercado Riera will pay to the partnership the sums of (a) $207,000 for the use of a farm for his horses business, (b) the amount of a determined tax, and (c) $144,760.79 of owed interest; that the partnership will pay the plaintiffs determined amounts in payment of interest and a determined amount to María Margarita Jiménez Widow of Mercado.

In the said action Margarita Mercado Riera and her husband Salvador S. Mandry Espinosa, and Pastor S. Mandry Mercado appear as plaintiffs. Mario Mercado Riera and his wife María Luisa Parra Capó, Adrián V. Romano, and José Rafael Mercado Jiménez, María Margarita, known as Daisy Jiménez Widow of Mercado, by herself, and as mother invested with patria potestas over her minor sons Mario and Luis Alberto, surnamed Mercado Jiménez, by themselves, and assisted by their mother with patria potestas over them, the firm Mario Mercado e Hijos; Eufemia Eileen Mercado Parra and Adriana L. Mercado Parra and their respective husbands H. Murray O'Hanlon and Patrick Wilson were included as defendants.

At this stage of the proceedings, on August 20, 1970, Margarita Mercado Riera, Salvador Mandry, and Pastor S. Mandry Mercado filed, in the Superior Court of Puerto Rico, Ponce Part, a civil action against Mario Mercado Riera for damages in the amount of $10,927,661.72 allegedly caused them by defendant's acts as managing partner of Mario Mercado e Hijos (Civil No. CS-70-3359). The complaint was amended on September 25, 1970, to the effects of making alternative allegations of class suit in favor of the members of the Heirs of Adrián Mercado Riera (Daisy Jiménez Widow of Mercado and the sons born during the marriage named Adrián, Mario, José, and Luis Alberto, surnamed Mercado Jiménez) or to include them as defendants. New defendants were included, besides, so that defendants are:

"(1) Mario Mercado Riera and his wife María Luisa Parra Mercado, by themselves, as members of the Heirs of Mario Mercado Parra and partners of the partnership Mario Mercado e Hijos, under Receivership.

"(2) Eufemia Eileen Mercado Parra and her husband H. Murray O'Hanlon as usufructuaries of properties belonging to the said firm Mario Mercado e Hijos.

"(3) Adriana Luisa Mercado Parra and her husband Patrick Wilson as usufructuaries of properties belonging to the said firm Mario Mercado e Hijos.

"(4) Jesús M. Guzmán in his capacity as Receiver of the firm Mario Mercado e Hijos in liquidation designated by the Superior Court of Ponce."

Among the allegations of the complaint in the action for damages (Civil No. CS-70-3359), it is said that a true and exact copy of the judgment rendered in the suit for the dissolution of the partnership (CS-57-2295), which is identified as Exhibit 1, is attached to and made a part of the complaint as if literally transcribed. Besides, specific allegations as to the fraudulent acts of defendant as managing partner of the

dissolved partnership that caused the alleged damages are made in the said complaint.[1]

Defendants alleged, as defense, that the judgment rendered in the suit for dissolution of partnership operates as res judicata over the present action for damages. The Superior Court understood it thus too and rendered judgment

[1] "

"TENTH: Defendant, Mario Mercado Riera, besides senior partner, was designated and has represented the firm as director and managing partner of the same as of the year 1937 until its dissolution.

"ELEVENTH: In conformance with the judgment that resulted in the dissolution of this firm, defendant, Mario Mercado Riera, in his capacity as managing partner, and under the authority of his condition as senior partner, used 'for personal profit the Firm's resources,' causing 'for that reason serious prejudices to the entity as well as to said members.' (Exhibit I, Conclusions of Law 1, paragraph (c).)

"TWELFTH: Pursuant to the terms themselves of the judgment referred to, among other acts, defendant, Mario Mercado Riera, as managing partner of the firm Mario Mercado e Hijos, made businesses which involved substantial amounts of money with the Southern Transport, Inc., corporation, of which said defendant was its president and main stockholder, according to the best information of the plaintiffs, and of which corporation codefendants Adriana L. and Eufemia Eileen Mercado Parra and their respective husbands also formed part as shareholders and directors. The aforementioned businesses had the effect just as the Ponce Part of the Superior Court concluded in the judgment previously cited 'of permitting the managing partner to operate a private business for his own benefit and that of his children, the exclusive customer being the Firm which was the same entity which had also furnished the necessary equipment for said enterprise.' (Exhibit I, Findings of Fact, 8.)

"THIRTEENTH: In the aforementioned judgment the Superior Court of Ponce concludes 'that the activities of the Heirs of Mario Luis Mercado Parra per se and/or through the Southern Transport, Inc., were activities performed by the managing partner Mario Mercado Riera for his own benefit and that of his daughters Eileen and Adriana Luisa.' (Exhibit I, Findings of Fact, 8(f).)

"FOURTEENTH: Likewise through an 'illegal method,' as qualified by the Superior Court of Ponce, in the aforementioned judgment, Findings of Fact No. 15, p. 29, defendant created an account called 'Reserve Fund,' using improperly for that purpose, the profits which he should have distributed, 'account arbitrarily controlled by Mario Mercado Riera,' managed for his own benefit and to the detriment of the interests and 'profits which, as per contractual provision, he had to distribute among the partners in

accordingly dismissing the complaint. The present petition for review was brought against that determination.

The trial court based its conclusion on the fact that "There is no doubt that the cause of action, which it is sought

the manner provided by the contract.'

"FIFTEENTH: The conduct and 'illegal method' of defendant Mario Mercado Riera, upon 'investing himself with the power of disposing on his own of the profits not distributed which belonged to the other partners, the managing partner incurred a gross violation of the partnership contract.' (Exhibit 1, Findings of Fact No. 17.)

"SIXTEENTH: The 'illegal method' referred to, or the 'gross violation of law' of defendant Mario Mercado Riera, for the aforesaid concept, upon creating a Reserve Fund for his own benefit, in conflict with the provisions of the partnership contract, has caused pecuniary loss to plaintiffs herein, in terms of their partnership participation of 21.25% and of loss at the cumulative annual rate of 10%, in an approximate sum of FOUR MILLION FOUR HUNDRED NINETEEN THOUSAND THREE HUNDRED EIGHTEEN DOLLARS AND SIXTY CENTS ($4,419,318.60).

"SEVENTEENTH: Likewise the determination in due time by this Honorable Court of punitive damages against defendant, Mario Mercado Riera, for an additional sum of $4,419,318.60 lies, inasmuch as the Superior Court of Ponce itself determined, after analyzing defendant's 'illegal methods' in the management of the partnership, that to the detriment of the shares and rights of plaintiffs herein, 'Central Rufina operates only and exclusively for the benefit of Mario Mercado and his daughters' and that 'what in fact Mario Mercado Riera has done is to put the capital of the partnership and that of the minority partners in particular at his personal service, this situation having been continuous and uninterrupted for 30 years.' (Exhibit I, Findings of Fact No. 19, p. 42.)

"EIGHTEENTH: Defendant—Mario Mercado—during his management in the Partnership Mario Mercado e Hijos, refused to distribute in a reasonable manner the profits belonging to the partners while 'Mario Mercado enjoyed directly the profits of the partnership,' having 'an open credit in the Partnership at his complete disposal which he utilized liberally for his personal benefit.'

"NINETEENTH: Said guilty conduct of defendant Mario Mercado caused 'serious pecuniary loss,' (Conclusions of Law No. 3, p. 54), to the plaintiffs herein, the latter being compelled to dispose of other securities and shares that in the passing of time have caused them losses for a sum not less than two hundred ninety-three thousand one hundred forty-one dollars and thirty cents ($293,141.30), claimable from defendant herein, Mario Mercado Riera.

"TWENTIETH: Likewise defendant—Mario Mercado Riera—also owes in payment of principal and interest to the plaintiffs herein, Margarita Mercado Riera, Salvador Mandry, and Pastor S. Mandry Mercado, the

to exercise now, existed when the original complaint was filed, and it should have been alleged then."

The defense of res judicata is incorporated in our jurisdiction in § 1204 of the Civil Code (31 L.P.R.A. § 3343). Said section provides that:

---

amount of $295,883.22 as a result of defendant's guilty and/or grossly negligent acts, corroborated by acts and meetings of the Board of Directors, declared 'null and lacking juridical validity of any class whatsoever' by the Superior Court of Ponce, in the judgment rendered by the latter. (Exhibit I, Conclusions of Law No. 4, p. 56.) The nullity of said defendant's acts arises 'upon ignoring all notice to partner José Rafael Mercado Jiménez' and permitting illegally the interference in matters of the partnership of two daughters of the defendant, Eufemia Eileen and Adriana Luisa Mercado Parra, who were not owners in fee simple of any partner's interest. (Exhibit I, Conclusions of Law No. 4, p. 56.) The interference and participation of codefendants Eufemia Eileen and Adriana Luisa Mercado Parra with their respective husbands in the transactions, negotiations, and acts performed in common agreement with codefendant Mario Mercado Riera and knowing that the same were 'null and lacking juridical validity of any class whatsoever' made them beneficiaries of large sums of money, which in due time this Court will be able to determine after the presentation of evidence to those effects, and which sums of money codefendants obtained for themselves with the absolute exclusion of the plaintiffs who were entitled to a participation equal to that alleged in the fourth allegation of the complaint and for a total of 42.50%. Plaintiffs allege that these beneficiaries are bound to return to plaintiffs the sum unduly obtained by them, as well as the interest from the respective dates on which they received the money and until its full payment; and likewise they allege that on account of these concepts they caused damages to plaintiffs in a sum not less than TWO HUNDRED THOUSAND DOLLARS ($200,000).

"TWENTY–FIRST: The 'intransigent attitude of the senior partner,' as qualified by this Honorable Court in its judgment (Exhibit 1), his dictatorial conduct in the management of the Partnership's business, the absolute contempt towards the legitimate rights of the plaintiffs herein, 'the real operation of Central Rufina as an entity primarily to the service of the managing partner and his immediate family,' 'the control to which the senior partner has maintained the minority partners submitted'—'situation that has lasted for thirty years,' besides the serious pecuniary losses caused to plaintiffs herein, have caused the latter great frustrations, inexpressible mental and moral damages, have permanently affected their physical and emotional health as a result of which they have been hospitalized on different occasions to receive painful medical treatment, all that due to the fraudulent and grossly negligent conduct of defendant Mario Mercado Riera in the illegal management of the businesses of the Firm Mario Mercado e Hijos. Plaintiffs allege that codefendants Eufemia Eileen

"In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such."

Appellants allege that the defense of res judicata cannot prosper because neither the identity of parties nor of cause of action exist.

From what has already been set forth it is evident that identity of parties exists between the litigants in the action for dissolution of the partnership and the litigants in the cause at bar. The plaintiffs are the same: Margarita Mercado Riera and her husband Salvador S. Mandry, and Pastor S. Mandry Mercado. In the previous dissolution case the defendants were Mario Mercado Riera and his wife María Luisa Parra Capó, the Heirs of Adrián Mercado Riera consisting of Adrián V., José Rafael, María Margarita, Luis Alberto, all surnamed Mercado Jiménez, and the widow Daisy Jiménez Widow of Mercado, Eufemia Eileen Mercado Parra and her husband H. Murray O'Hanlon, Adriana L. Mercado

---

and Adriana Luisa Mercado Parra, to the extent that they participated with their father Mario Mercado Riera in the benefits that he unduly awarded them as a result of the operations of the Central Rufina, are also liable for the damages that on account of this concept were caused to plaintiffs and are indebted to the latter in the amounts that they unduly took for themselves as a result of these operations, amount which the Court will determine in due time once the evidence is presented. The damages suffered by plaintiffs on account of this concept are valued at a sum of not less than FIVE HUNDRED THOUSAND DOLLARS ($500,000) for each one of the three plaintiffs.

"TWENTY–SECOND: The Receivership of Mario Mercado e Hijos is joined as defendant in this action on the ground that many of the acts of said Mario Mercado Riera took place while he was acting as managing partner of said Firm, but it being understood that no allegation whatsoever is being made against the other partners of the Firm Mario Mercado e Hijos and for the purpose that the Receiver of Mario Mercado e Hijos be duly notified of this action and that the Court may enter, for compliance therewith, the proper orders to guarantee plaintiffs' rights and the effectiveness of the judgment which in due time this Honorable Court may render in favor of plaintiffs."

Parra and her husband Patrick Wilson, and the Partnership Mario Mercado e Hijos. In the present action, as it is inferred from the amended complaint, the defendants are Mario Mercado Riera and his wife María Luisa Parra, Eileen Eufemia Mercado Parra and her husband H. Murray O'Hanlon, Adriana L. Mercado Parra and her husband Patrick Wilson, Jesús M. Guzmán, in his capacity as receiver of Mario Mercado e Hijos. Besides, Adrián, Mario, José, and Luis Alberto, all of them Mercado Jiménez, and the widow Daisy Jiménez, who compose the Heirs of Adrián Mercado Riera and they should be considered defendants since, as the trial court correctly concluded, the instant case cannot be considered as a class action.

■ The cases of *Camacho* v. *Catholic Church*, 72 P.R.R. 332 (1951) and *Irizarry* v. *Díaz*, 35 P.R.R. 132 (1926), cited by appellants are not applicable. In the first it was decided that a judgment rendered in a suit for breach of contract against the Congregación de la Misión de los Padres Paúles does not have the effect of res judicata over a subsequent action on the same ground against the Catholic Church because there is no identity of persons. In that case two different juridical entities were involved. In the second case cited, an initial action by the wife which in fact corresponded to the conjugal partnership was involved. Consequently, the judgment rendered in said action does not operate as res judicata over a subsequent action filed by the husband as Administrator of the conjugal partnership. In the case at bar, on the contrary, the same parties appear in the same capacity[2] with the only exception of Jesús M. Guzmán, who is a nominal

---

[2] "The capacity in which the parties appear concern their relation with the rights and acts which they exercise, and thus it would be proper for the one who in his own right claimed a thing to renew a litigation, if later he does it as agent, assignee, or heir of another person." VIII-II Manresa, *Comentarios al Código Civil Español* 243–244 (Fifth Edition 1950). In the suit for dissolution, as in the one at bar, defendants did not carry any representation, but only their own person and patrimony.

party upon appearing as receiver in representation of Mario Mercado e Hijos. See *Heirs of Zayas Berríos* v. *Berríos*, 90 P.R.R. 537 (1964).

Appellants assign that there is no identity of causes since in the first case the action was brought by several partners against the partnership to obtain its dissolution while the present action was brought by appellants who had been said partners against the one who had been the managing partner of the partnership, by reason of the damages that his fraudulent and guilty acts caused appellants and which gave rise to the dissolution of the partnership. They assert, besides, that no identity exists between the things object of both actions. They maintain that in the first action, the issue centered on the entity itself, the partnership; while the object of the case at bar, on the contrary, is the recovery of the damages suffered by plaintiffs.

In order to decide, we must examine the status of our doctrine about the question referred to.

As to the identity of things Scaevola tells us that:

"It may concern the absolute identity, in the sense that the second action may refer to the property or same object with which the first action dealt, but in general, *it suffices that it refers to the same subject matter, even though in one it was undertaken completely and in the other only partially,* and although the things may have diminished or may have been altered, from the first to the second, affecting their value or some other of their conditions." (Italics ours.) XX *Código Civil* 534 (2d ed. 1958).

Manresa, on the other hand, points out that:

"When rights are claimed (as for example usufruct, possession, use, etc.) the same thing may be the object of different litigations, *except the case in which all those rights rely on the same cause which has already been decided, for example, the same contract which has been declared void.*" (Italics ours.) *Op. cit. supra* at p. 237.

Both actions, without any doubt, turn on the nonperformance by the managing partner of the partnership contract. The specification which appellants propose as to the object of both litigations entails an erroneous identification between the requested remedy and the thing involved in both suits.

■ The doctrine of res judicata prevents the litigation in a suit of a claim that could have been litigated and adjudicated in a previous suit between the same parties, and about the same cause of action. *Isaac Sánchez* v. *Universal C.I.T. Credit*, 95 P.R.R. 361, 370 (1967); *Riera* v. *Pizá*, 85 P.R.R. 256, 262 (1962); *Capó Sánchez* v. *Sec. of the Treasury*, 92 P.R.R. 817, 819 (1965); *Sastre* v. *Cabrera*, 75 P.R.R. 1, 3 (1953). No controversy whatsoever exists as to the fact that the claim for damages could have been litigated and adjudicated in the previous action for the dissolution of the partnership.[3] The controversy turns on the fact as to whether they should have been tried jointly. That is, whether or not they constitute a same cause of action.

■ The North American case law is not clear nor uniform in the fixation of criteria to determine what is a cause of action to the effects of the doctrine of res judicata. See, *Developments in the Law—Res Judicata*, 65 Harv. L. Rev. 818, 824 (1952), Schopflocher, *What is a Single Cause of Action for the Purpose of the Doctrine of Res Judicata?* 21 Ore. L. Rev. 319 (1942). Moore points out that there are several suggested criteria for the determination of what is a cause of action for purposes of the doctrine of res judicata. Some of them, he states, are (1) whether the same right has been infringed by the same wrong, (2) whether there is such a measure of identity that a different judgment in the second

---

[3] See § 104 of the Code of Civil Procedure of 1904, 32 L.P.R.A. § 533, subsection 1, which was in force when the action for dissolution was brought on October 9, 1957. They are also subject to joinder under Rule 14 of the Rules of Civil Procedure of 1958. See, 1B, Moore, *Federal Practice* 1151–1163, § 0.410, and *Capó* v. *A. Hartman & Co.*, 57 P.R.R. 190 (1940).

action would destroy or impair rights or interests established by the first judgment, (3) identity of grounds, (4) whether the same evidence would suffice to sustain both judgments.

■ On the other hand Manresa, in his above-mentioned work, at pp. 237–238 and 240, points out that:

"For the effects of res judicata, the word *cause* has a meaning which is not the reason or consideration of a contract or juridical act. It means the main ground, the origin of the actions or exceptions raised and decided, and it should not be confused with the means of proof nor with the legal grounds of the claims alleged by the parties." (Italics in the original.)

"Although, as we said before, the successive exercise of different actions is in general possible, what has been first decided may constitute res judicata for the second action, when the new action is sort of embedded in the first, or is an inseparable consequence of the same: thus, the petition of an alleged co-owner claiming the co-ownership that is denied to him having been dismissed, it is logical that the former cannot afterwards exercise the action to request the division of the common thing, etc."

Scaevola, in his also mentioned work, at p. 535, informs that: "The cause is the ground for the claim of request."

■ However, the ground, reason or motive for the claim cannot be identified with the remedy requested as appellants pretend. Said point of view would permit the litigants to split their shares in as many actions as remedies to which they would have right. In *Millán* v. *Caribe Motors Corp.*, 83 P.R.R. 474, 487 (1961), this Court pointed out that:

"It has been said that the best test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions. If different evidence is required to sustain the different actions, then the causes of action are different and the former judgment is no bar to litigate the other cause of action. Freeman [*Law of Judgments*, 5th ed.], § 687."

See, *Hernán Corales Irizarry, etc.* v. *International Harvester Company of Puerto Rico*, R-70-106, judgment of February 12, 1971.

██ An analysis of the suit for dissolution and of the complaint filed in the present case for damages shows that both claims are based on the acts of the managing partner in violation of the partnership contract. The necessary evidence to establish both claims is identical. The allegations which in the complaint in the case at bar are directed to support the claim for damages are based on findings of fact and conclusions of law set forth in the suit for dissolution. The only additional necessary evidence would be directed to establish the amount of the damages claimed. What is sought is to obtain an additional remedy. The remedy, nevertheless, is not an integral element of the cause of action, therefore an action for damages based on a right adjudicated in a prior suit between the same parties in which the damages should have been claimed does not lie. *Bankers Life & Casualty Company* v. *Kirtley*, 338 F.2d 1006, 1011 (8th Cir. 1964); *Masterkraft Lamp Company* v. *Mortex*, 183 N.E.2d 12 (App. Ct. Ill. 1962); *De Monbrum* v. *Sheet Metal Workers International Ass'n*, 295 P.2d 881, 887 (D.C. of App. Cal. 1956); *Reno Club* v. *Harrah*, 260 P.2d 304, 306 (Nev. 1953); *Bond* v. *Thruston*, 98 P.2d 343, 345, 100 P.2d 74 (Nev. 1940). See, also, *McCafrey* v. *Wiley*, 230 P.2d 152, 155 (D.C. of App. Cal. 1951); *Lane* v. *Page*, 251 P.2d 1078 (Colo. 1952); *Blum* v. *William Goldman Theatres*, 174 F.2d 914 (3d Cir. 1948); *Kraft* v. *Forrest Park Realty & Insurance*, 142 S.E.2d 402 (Ct. of App. Ga. 1965); and the annotation *Decree, granting or refusing injuction as res judicata in action for damages in relation to matter concerning which injuction was asked in first suit*, 26 A.L.R.2d 446.

Appellants set forth, citing *Pérez* v. *Bauzá*, 83 P.R.R. 213, 218 (1961), that the defense of res judicata should not be applied rigidly if in so doing the ends of justice are defeated,

especially if reasons of public policy are involved. Nevertheless, unlike *Pérez* v. *Bauzá*, in which an action of filiation invested with public interest was involved, now we are dealing with purely private relations between the parties that do not justify a deviation from the normal effect of res judicata.

In the past, in order to make complete justice or when considerations of public policy have been involved, this Court has set aside the doctrine previously set forth as to the identity of causes. Thus in *Millán, supra*, in which we affirmed the judgment granting an action of rescission of a conditional sales contract of a truck and damages subsequent to the repossession of the truck by its seller relying on default in the payments under the said contract, and we refused to apply the doctrine of res judicata or collateral estoppel, we said that:

". . . In view of the aforesaid nature of this proceeding [that of repossession] we cannot inexorably require that other causes of action foreign to the repossession be litigated therein. The circumstances of a case such as this in which, in addition to the formal fatal defects in the contract—in violation of the specific law based on reasons of public policy—there also exists the element of deceit, warrant departure, by exception, from the general rule in the *Mattei* case . . . . [*Mattei* v. *Maldonado*, 70 P.R.R. 443 (1949)]."

We reaffirmed what was stated in *Millán, supra*, in our judgment of February 12, 1971, in *Corales Irizarry* v. *International Harvester Company of Puerto Rico, supra*, in which we said that the order for repossession did not constitute res judicata in the subsequent action of rescission of contract and damages because the vehicle had been sold with substantial hidden defects.

In *Pérez* v. *Bauzá, supra*, we said that:

"However, the courts have refused to apply rigidly the defense of res judicata if in so doing it defeats the ends of justice, especially if reasons of public policy are involved. . . . As already stated, the doctrine rests upon the basic principle

that there should be an end to litigation, but if the rigid application thereof would in practice defeat a right permeated in some way with public interest, the courts are inclined to a solution which would guarantee proper justice instead of rigidly applying a fiction of law which rests fundamentally upon a principle of convenience and procedural order. . . . In other words, the rule is not absolute and should always be weighed with the equally salutary principle that justice should be done in every case.

"There is no question that the action of filiation, which is the vehicle granted by law for determining the family status of the citizen, is clothed with a great public interest and it even has constitutional tangencies, if it is so desired, thereby affecting the individual's dignity."

We have decided two cases in which we refused to apply the doctrine of res judicata because, despite the fact that the second action could be joined to the first, the failure to join it did not constitute a waiver of the claim for damages because the right to join several causes of action is discretionary with the plaintiff. Said cases are those of *Blanco* v. *The Capital*, 77 P.R.R. 607, 612 (1954), and *Capó* v. *A. Hartman & Co., supra*. In *Blanco* we concluded that the judgment in an action to quiet title to a lot did not constitute res judicata in another action for damages because the owner of said lot was deprived of its use for several years. We justified in this case the departure from the accepted rule of applying the doctrine of res judicata by adducing to that effect the reason which we set forth in *Capó, supra*, in order not to apply it to an action claiming profits that was not joined to the previous action of revendication of the property, reason which we previously quoted, that is to say, that such joinder is discretionary with the plaintiff.

We believe that these cases should be reversed. In cases like these, and like the one at bar, in which no circumstances exist like in *Millán, supra*, and *Pérez* v. *Bauzá, supra*, what we must determine is whether or not both actions constitute

the same cause of action. We conclude that it is so on the grounds previously set forth.

For the reasons stated, the judgment rendered by the Superior Court, Ponce Part, in this case, on May 13, 1971, must be affirmed.

Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Torres Rigual, and Mr. Justice Martín concur in the result. Mr. Justice Hernández Matos took no part in the decision of this case.

